UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TOMARCUS PORTER | CIVIL ACTION |
| VERSUS | NO. 24-504 |
| CALEB LEMIRE, ET AL. | SECTION "E" (2) |

## REPORT AND RECOMMENDATION

Before the court is a Rule 12(b)(6) Motion to Dismiss filed by defendants Caleb Lemire, Dustin Luper, and Thomas Mitchell.  ECF No. 20.  Plaintiff Tomarcus Porter filed an opposition memorandum on August 8, 2024.[1]  ECF No. 35.  No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Porter is a convicted inmate housed in the B.B. "Sixty" Rayburn Correctional Center ("RCC").  ECF No. 4, ¶III(A), at 3; ECF No. 36.  He filed this *pro se* and *in forma pauperis* complaint under 42 U.S.C. § 1983 against defendants, Master Sergeant Caleb Lemire, Master Sergeant Dustin Luper, Colonel Thomas Mitchell, and Lieutenant Lance Wallance, all correctional officers at RCC, asserting claims of assault, battery, due process violations, excessive force, deliberate indifference, malfeasance, and failure to supervise.  ECF No. 4, ¶III(B)-(E), at 4; *id.*, ¶IV, at 4.

### A.    The Complaint (ECF No. 4) and Supplemental Complaint (ECF No. 19)

Porter alleges that, on September 8, 2021, at approximately 5:37 a.m., he was being escorted by defendants Luper and Lemire in a "two hands escort" down the tier on Sleet 3R after

---

[1] Porter asked the court to "pause" these proceedings while he focused on his state criminal matters.  ECF No. 33. Although I denied Porter's motion (ECF No. 34), the court recognizes the timing of his transfer out of RCC and the disadvantages he faced in timely filing an opposition memorandum.

a prior incident between him and correctional officers.  ECF No. 4 at 6.  He claims that the officers

began to move him backward and forward to make it look as if he was resisting them when he was

not.  He alleges that they then maliciously and sadistically slammed him down directly on his head.

Porter alleges that this caused his eye to bleed, which is confirmed by the last step response of the

grievance process that indicates he had a laceration on his eye and was diagnosed by the mental

health unit with trauma.  *Id*.; ECF No. 19, at 1.

He also alleges that Luper and Lemire showed deliberate indifference because they knew

right from wrong but fabricated a report accusing him of Rule 3 and Rule 5 violations.  ECF No.

19, at 1.  He claims that their actions amounted to excessive force while acting under color of state

law, as well as violation of due process, assault, battery, and unusual punishment under the Eighth

Amendment.  He also asserts that Lieutenant Wallance failed to supervise Colonel Mitchell, who

fabricated reports and ignored the grievance complaint in violation of his equal protection rights.

Porter further claims that Colonel Mitchell fabricated his report about the incident in

reliance on the officers' rules violation report, and he overlooked or failed to investigate Porter's

allegations included in his administrate grievance complaint.  *Id*.; ECF No. 19, at 1.

As relief, Porter seeks unspecified injunctive relief, money damages, and any other relief

deemed just.  *Id*., ¶V, at 5.

Attached to his complaint, Porter provides a copy of a handwritten grievance complaint

dated December 6, 2021, in which he reported the incident with Luper and Lemire to prison

officials.  ECF No. 4 at 6.  In the grievance complaint, Porter alleged that he was escorted by Luper

and Lemire on Sleet 3R, and about halfway down the hall, the officers moved his arms back and

forth to make it look like he was resisting.  The officers then slammed him on his head, causing

his right eye to bleed.  The officers asked him to stop resisting but he was not.  They then held

down his legs.  He alleged that this was excessive force in violation of his Eighth Amendment rights and showed the officers' deliberate indifference.  He claimed that they wrote him up for Rule 3 and Rule 5 violations based on a fabricated report, showing that hatred for him.  He asked for damages for the excessive force, the false report, deliberate indifference, and neglect.  He also asked for no retaliation against him.

Porter also attached the January 20, 2023, first step response to the grievance from RCC Warden Travis W. Day denying relief.  *Id*. at 8.  The Warden indicated that the September 8, 2021, incident required the use of force because Porter continually refused to comply with orders and physically resisted the officers.  Warden Day indicated that video and documentation of the incident was administratively reviewed by Colonel Mitchell, and it was determined that the use of force was justified and necessary to bring Porter into compliance.  The response also reflects that Porter was examined by medical personnel and transported to Our Lady of the Angels Hospital for consultation and treatment for facial contusion.

Porter provided a copy of the second step response from the Office of the Secretary of the Louisiana Department of Public Safety and Corrections dated May 17, 2023, which denied Porter's appeal.  *Id*. at 9.  The response references the incident on the morning of September 8, 2021, as occurring as the result of Porter's refusal to remove something from his mouth.  The response indicates that Porter was sprayed with a chemical agent to bring him into compliance.  He was assessed by medical staff after Porter complied.  The response indicates that it was the medical staff who noticed that Porter had also suffered a small laceration to his eyebrow, which was treated. The second incident referenced in the report occurred later that same day when Porter was reportedly ripping the metal frame of his bed apart and refused verbal orders.  Porter reportedly cursed and spit at the officers and had to be taken down to the ground, where he continued to thrash

and grab at officers. After additional officers arrived, Porter ceased his actions. He was taken to the medical unit for examination and sent to Our Lady of the Angels Hospital for x-rays of his jaw and spine, all of which were negative. The hospital staff returned Porter with a diagnosis of "contusion of face (bruising)." *Id*.

**B.    Defendants' Motion to Dismiss (ECF No. 20)**

Pursuant to FED. R. CIV. P. 12(b)(6), defendants Lemire, Luper, and Mitchell generally move to dismiss Porter's § 1983 claims against them for failure to state a claim for which relief can be granted. Defendants do not specifically address Porter's claims against defendant Mitchell for failure to investigate his grievance complaint or Porter's apparent state law claims of assault, battery, and malfeasance against defendants Luper and Lemire. The court finds that the defendants, instead, limited their request to dismissal of Porter's § 1983 claims because the force used by Luper and Lemire was justified. *See* ECF No. 22-11, at 18. The motion does not request dismissal of the other claims, and those claims will not be resolved as part of this Rule 12(b)(6) motion.[2]

In support of their motion, defendants ask this court to evaluate Porter's § 1983 claims under Rule 12(b)(6) standards by considering the documents attached to his complaint and "the pleadings filed in his seven other Section 1983 cases showing that Porter has a history of filing frivolous complaints." *Id*., ¶A, at 9. Defendants argue that, even with liberal construction afforded *pro se* pleadings, "the Court cannot create causes of action where there are none, particularly since two administrative reviews of his Complaint agreed that there was no merit to his Complaint." *Id*., ¶B, at 10. The defendants instruct the court to avoid speculating that Porter may be able to state a

---

[2] *See Woodfox v. Cain*, 609 F.3d 774, 792 (5th Cir. 2010) ("Although we liberally construe *pro se* pleadings, we do not afford such latitude to pleadings prepared by counsel.").

claim and instructs that "the Court would be on solid ground" to assume Porter has stated his best case. *Id*.

Defendants further argue that because Porter already has had two of his seven other *in forma pauperis* cases dismissed as frivolous under § 1915, the court should dismiss this case because "Porter, a prolific filer, is one 'strike' away" from being barred from proceeding as a pauper under § 1915(g). *Id*., ¶C, at 12. Defendants contend that their motion to dismiss should be granted on the grounds urged, "particularly the arguments of frivolousness and failure to state a claim, this lawsuit could constitute the end of the continuous lawsuits being brought by Porter *in forma pauperis*, thus promoting judicial efficiency and fairness, particularly for the four other lawsuits that were filed this year." *Id*. at 13.

Defendants further urge that, because they have been named only in their official capacities, Porter has failed to state a claim against them as he has not alleged violation of a constitutional right as the result of a policy or custom, nor has he identified a policy or custom under *Spiller v. City of Texas City, Pol. Dep't*, 130 F.3d 162, 167 (5th Cir. 1997), and similar cases. *Id*., ¶D, at 13-14.

Defendants also argue that, even if considered, Porter fails to state a claim against them in their individual capacities. *Id*., ¶D, at 14.[3] Defendants contend that Porter has alleged no conduct that caused a constitutional deprivation "considering the reasonable belief of harm presented by Porter" and Porter's lack of compliance with the officers' orders. *Id*. at 16. Referencing the first step grievance response "and the ARP Screening Officer's report," the use of force and chemical spray was used because of a "reasonable belief" Porter could inflict harm on himself or others. Defendants further argue that Porter failed to allege specific factual allegations to support each of

---

[3] Defendants have included two sections designated as "D". This reference is to the second section "D."

his "peppering" of claims of "'excessive force,' 'malicious,' 'neglect,' 'failure to supervise,' 'retaliation,' and 'deliberant,' as well as legal claims such as 'assault and battery/due process 14th amendment violation,' '8th Amendment violation,' 'false report,' 'color of state law,' and 'malfeases [sic] of an officer.'"  *Id*.  Defendants further argue that Porter's claim that he has nightmares are too vague and conclusory to support a § 1983 claim.  Defendants also re-assert that the court cannot grant relief against defendants for claims not pled by Porter.  *Id*. at 17.

As an alternative argument, defendants contend that they are entitled to qualified immunity because Porter has not stated the violation of a constitutional right that was clearly established at the time.  *Id*., ¶E, at 17.  Defendants argue that Porter "has not provided any analysis of law in his pleadings whatsoever" to present "any legal precedent" to support his claims.  The defendants urge that Porter has not stated facts to show that they violated any of his clearly established constitutional rights.  *Id*. at 18.

### C.      Porter's Opposition to the Motion (ECF No. 35)

On August 8, 2024, the court received an opposition from Porter in which he alleges additional facts related to the circumstances of the incident with Luper and Lemire.  ECF No. 35.  Porter alleges that the incident occurred while Lemire and Luper were each holding one of his arms when they began to move him back and forth to make it look as if he was resisting.  *Id*. at 1.  He argues that this demonstrates use of their uniform to cover up their malfeasance.  He also argues that they had intent to cause him harm, while acting under color of state law, by slamming his head to the ground.  He argues that officials are not immune when they violate clearly established law.  He asserts that this also amounted to assault and battery and cruel and unusual punishment.

Porter also explains for the first time that, when the incident occurred, he was handcuffed behind his back and had shackles on his feet.  *Id*. at 2.  He asserts that he was "choke thrown to

the ground" and kneed in the back after he was handcuffed and secured which, he argues, is a violation of the Eighth Amendment. Porter also indicates that he can show that the officers' use of force was intended to punish and was not merely an incident of some other legitimate purpose and that the injury he received was more than *de minimis*. He also argues that the allegation of an unprovoked blow creates a factual issue regarding the use of excessive force, citing *Bee v. DeKalb Cnty*. 679 F. Supp. 1107, 1109 & 1113 (N.D. Ga. 1988).

Porter further explains that defendant Lance "Wallace" was the supervisor on duty. He contends that he "got into it" with Wallace's father, Charles Wallace, so the son Lance retaliated against him.

Broadly construing his pleading, Porter also alleges that, because he is inexperienced in the law and has only the assistance of inmate counsel, he should be allowed the chance to better state a claim. He indicates that he will again file a motion for appointment of counsel and is still trying to obtain counsel on his own.

## II.    STANDARDS OF REVIEW

### A.    Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." "A motion to dismiss for failure to state a claim is not meant to resolve disputed facts or test the merits of a lawsuit."[4] Rather, it tests whether, in plaintiff's best-case scenario, the complaint states a plausible case for relief.[5]

The Supreme Court clarified the Rule 12(b)(6) standard of review in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). To avoid dismissal, a

---

[4] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).
[5] *Id.*

complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face (*i.e.,* the factual allegations must "be enough to raise a right to relief above the speculative level").[6]  It is not enough to allege facts consistent with a claim because the allegations must move past possibility and to plausibility of "entitlement to relief."[7]  If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[8]

> Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "shown"— "that the pleader is entitled to relief."[9]

The complaint need not contain detailed factual allegations, but it must offer more than labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[10]  The complaint must include enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[11]  Although all well-pleaded facts are accepted as true and the complaint is considered in the light most favorable to the plaintiff, the court should not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[12]

---

[6] *Twombly*, 550 U.S. at 555 (citation omitted).

[7] *Id.* at 557–58; *Iqbal,* 556 U.S. at 678.

[8] *Iqbal,* 556 U.S. at 678 (citation omitted).

[9] *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)) (internal citation omitted); *see also Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citation omitted) (stating that where the facts do not allow the court to infer more than a mere possibility of misconduct, the complaint does not show that the pleader is entitled to relief).

[10] *Iqbal*, 556 U.S. at 678 (citation omitted).

[11] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 545).

[12] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (same); *see also Twombly*, 550 U.S. at 555 (The "obligation to provide the grounds of [] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citations and internal quotation marks omitted).

Although Rule 12(d) of the Federal Rules of Civil Procedure requires the court to treat the motion as a Rule 56 motion when matters outside of the pleadings are presented and not excluded by the court, the court may consider documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice in the Rule 12 analysis without converting the motion to a Rule 56 motion.[13]  In addition, the court may consider any documents attached to either the motion to dismiss or an opposition to that motion when the documents are referenced in the pleadings and are central to a plaintiff's claims.[14]  When an allegation is contradicted by the contents of an attached exhibit, the exhibit (not the allegation) controls.[15]

## B.    <u>Required Elements of a § 1983 Claim</u>

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

---

[13] *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citation and internal quotation omitted) (stating a court may consider Complaint, its proper attachments, documents incorporated by reference, and matters of judicial notice).

[14] *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citations omitted); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 293–94 (5th Cir.2008) (considering exhibits attached to an opposition because "[n]o party questions the authenticity of these two documents and both were sufficiently referenced in the complaint to permit their consideration on a motion to dismiss"); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 238 F. Supp. 3d 799, 815 (S.D. Tex. 2017), *aff'd sub nom. Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727 (5th Cir. 2019).

[15] *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (stating that if an allegation is contradicted by contents of an exhibit, the exhibit and not the allegation controls) (citing *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)); *Thermo Credit, LLC v. Cordia Corp.*, No. 12-1454, 2013 WL 425930, at *6 (E.D. La. Feb. 4, 2013) (considering documents referenced or attached to complaint and noting that a document that contradicts the pleading takes prominence) (citing *Assoc. Builders, Inc. v. Ala.  Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[16]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[17]

A plaintiff must satisfy three elements to establish § 1983 liability:

(1)     deprivation of a right secured by the U.S. Constitution or federal law;
(2)     that occurred under color of state law; and
(3)     was caused by a state actor.[18]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[19] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[20] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[21]

## III.   **DISCUSSION**

Defendants Lemire, Luper, and Mitchell assert several grounds for the grant of their Rule 12(b)(6) motion: (1) Porter's history of prolific filings demonstrates a propensity to file frivolous suits, and this one should be dismissed for that reason and not overly read to include a claim; (2) Porter did not designate the capacity in which defendants were named, and assuming they are named only in an official capacity, his complaint fails to state a claim that a constitutional right was violated by a policy or custom at RCC; (3) alternatively, Porter's complaint also fails to state

---

[16] 42 U.S.C. § 1983.

[17] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).

[18] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

[19] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

[20] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

[21] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984).

a claim against them in their individual capacities because the administrative grievance process determined that the officers acted reasonably when Porter failed to comply with their orders; and (4) if individual capacity claims are found, defendants are entitled to qualified immunity because he has not alleged the violation of a clearly established constitutional right.

For the reasons that follow, defendants' arguments under the PLRA pauper and screening provisions are not relevant or appropriate under Rule 12(b)(6).  Plaintiff's complaint is deemed to assert individual capacity claims.  Defendants motion is by its own terms limited to the justification for Luper and Lemire's use of force, and the motion fails to address Porter's claims against Mitchell, Porter's state law claims of assault, battery, and malfeasance, or any of the elements required for Porter to state a § 1983 claim of excessive force under the Eighth Amendment, much less any basis for qualified immunity at this time.

**A.    Porter's Prior Cases, the PLRA, and 28 U.S.C. §1915 and § 1915A**

**1.    The PLRA and § 1915(g) Three Strikes Rule**

Defendants reference the PLRA, specifically as codified at 28 U.S.C. §1915 and § 1915A, to suggest that the court condemn Porter's complaint as frivolous because he already had two prior cases dismissed as frivolous.  Defendants urge that this case could be his next and final "strike" under § 1915(g), which would end his flow of lawsuits brought as a pauper.  ECF No. 20-11, ¶C, at 11-13.  This is not a proper application or consideration of the three strikes rule nor is any of this relevant to the Rule 12(b)(6) analysis.

The court needs no reminder from counsel of its statutory obligations to assess a prisoner's ability to proceed *in forma pauperis* under § 1915(g), as well as its statutory duty to conduct a frivolousness review in cases such as this.  In fact, the defendants' argument regarding the purpose behind the PLRA (*see* ECF No. 20-11, at 12) is almost identical to the recitation of law from this

court's recent decision in *Edwards v. Barbier*, No. 24-619, 2024 WL 1556775, at *1 (E.D. La.

Apr. 10, 2024) (Currault, MJ), applying the three-strikes rule to another prisoner:

> The passage of the Prison Litigation Reform Act ("PLRA") was effected, in part, "to deter frivolous prisoner litigation in courts 'by making all prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by liability for filing fees.'" *Jackson v. Stinnett*, 102 F.3d 132, 136-37 (5th Cir. 1996) (quoting *Leonard v. Lacy*, 88 F.3d 181, 185 (2d Cir. 1996)). The goals of 28 U.S.C. § 1915 were modified by the PLRA to include curbing abuse of the privilege to proceed without prepayment of fees: "Because in forma pauperis status is a privilege, it follows that the privilege may be revoked when the goals of section 1915 are not being furthered." *Murphy v. Jones*, 801 F. Supp. 283, 288 (E.D. Mo. 1992).

Furthermore, the PLRA's three-strike rule is one to be applied at the time suit is filed, when

the court considers the application to proceed *in forma pauperis*. In applying § 1915(g), the court

must determine if the inmate has, "on three or more *prior* occasions," (emphasis added) filed civil

cases or appeals that were dismissed as frivolous, malicious, or for failure to state a claim, with

"prior" being the operative word.[22] Every time any prisoner files a pauper application pursuant to

§ 1915 with a complaint or notice of appeal, this court scrutinizes its own extensive previous case

records, searches records of other federal courts through the PACER system, and searches other

"three-striker" and restricted-filer lists maintained or compiled by the United States Fifth Circuit

Court of Appeals and other courts around the country to determine whether the prisoner has earned

three strikes. In this case, the court's review of Porter's prior cases was completed by March 26,

2024, when pauper status was granted. ECF No. 6. At that time, as defendants concede, Porter

had (and still has) only <u>two</u> "strikes."[23]

---

[22] *Davis v. Evans*, No. 15-138, 2017 WL 11707996, at *1-2 (E.D. Tex. May 5, 2017) ("While the statute applies retroactively so as to count strikes acquired before its enactment, a plain reading of the statutory language forecloses the interpretation that strikes which did not exist prior to the filing of the present lawsuit may be counted against the plaintiff under 28 U.S.C. § 1915(g).").

[23] *Porter v. Bennett*, Civ. Action 22-4036"L"(1) (E.D. La. Mar. 23, 2023); *Porter v. Nicholas*, Civ. Action 22-4002"A"(4) (E.D. La. Aug. 10, 2023).

The three-strikes provision does *not* allow a court to reevaluate pauper status, once granted, on the basis that an additional strike is subsequently earned by the prisoner.[24]  Based on his financial affidavit and the certification of Porter's inmate account information, he was entitled to proceed as a pauper when this suit was filed.  Defendants have pointed to no change in his financial status that would warrant reevaluation of his pauper status at this time.

For these reasons, defendants' extensive arguments about the implications of the PLRA's three strikes rule and the potential future application to Porter, especially since this is urged in a Rule 12(b)(6) context, is inapposite.  To whatever extent defendants seek relief from Porter's claims/complaint in this case under Rule 12(b)(6) based on the inapplicable three-strikes rule under § 1915(g), that request must be denied.

Other than the three-strikes rule addressed above, the only other relevance any prior (or subsequent) civil action may have under § 1915 or § 1915A would be to consider the maliciousness of a complaint or claims.[25]  Again, as part of its statutory duties, immediately upon the filing a prisoner complaint, pauper or otherwise, this court carefully reviews its own records and searches those of other federal courts to ascertain whether a case can be construed as malicious.  Defendants

---

[24] *See Young v. Kelly*, No. 20-2131, 2020 WL 8571662, at *4 (E.D. La. Dec. 21, 2020) (discussing post-filing strikes and determining that revocation of pauper status for a later received strike would not be in line with the language of § 1915(g)); *Stringer v. Riley*, No. 21-3760, 2022 WL 17072879, at *4 (W.D. La. Sep. 27, 2022) ("If Plaintiff accumulates three strikes, that will affect his ability to later file new complaints as a pauper.  But it will not in itself affect the multiple pending suits already filed by Plaintiff."), *R&R adopted by* 2022 WL 17072033, at *1 (W.D. La. Nov. 17, 2022); *Davis*, 2017 WL 11707996, at *1-2; *see Lopez v. U.S. Dep't of Just.*, 228 F. App'x 218, 219 (3d Cir. 2007) ("The statute does not authorize courts to revoke *in forma pauperis* status if a prisoner later earns a third strike."); *accord Alexander v. Texas Dep't of Crim. Just.*, 951 F.3d 236, 246 (5th Cir. 2020) (Ho, J., concurring) ("The statutory text states that courts must count findings of frivolousness 'prior' to 'a prisoner bring[ing] a civil action or appeal,' 28 U.S.C. § 1915(g) . . ..  Imagine the following situation:  A prisoner has accrued two strikes.  He files a new lawsuit and seeks IFP status.  He subsequently receives a third strike in a previously filed action or appeal.  Would that third strike result in a denial of IFP status in the new pending lawsuit?  No: The third strike would be an 'occasion' under the statute – but not one 'prior' to the 'prisoner bring[ing] a civil action or appeal.' 28 U.S.C. § 1915(g).").

[25] A complaint is malicious when it "seek[s] to relitigate claims which allege substantially the same facts arising from a common series of events which have already been unsuccessfully litigated by the IFP plaintiff."  *Wilson v. Lynaugh*, 878 F.2d 846, 850 (5th Cir. 1989) (citations omitted).

do not suggest that Porter's current case is malicious, and, as this court determined on its initial review months ago, nothing in Porter's current complaint is repetitive or duplicitous of the claims in his other suits that would result in a characterization of this case as malicious.

Defendants' arguments suggesting that any future strikes, or for that matter, any other filed civil rights suits in some way impact or should influence this court's review of Porter's current complaint in this case is misplaced. Porter's complaint has been and will be assessed on its own merit under the proper, applicable legal standards. Neither his prior or other civil rights cases nor the three-strikes rule have any bearing on whether Porter has stated a claim for which relief can be granted under Rule 12(b)(6) in this case.

### 2. Dismissal under § 1915(e) and § 1915A

The other statutes, § 1915(e) and § 1915A, referenced by defendants by their very terms authorize the court to *sua sponte* dismiss a case filed by a prisoner proceeding *in forma pauperis* (and any prisoner case under § 1915A) upon a determination that the complaint is frivolous or malicious, the complaint fails to state a claim for which relief can be granted, or the complaint seeks monetary relief against an immune defendant.[26] Neither of these provisions provide a basis for counsel to urge a frivolousness review in a Rule 12(b)(6) motion to dismiss, nor is frivolousness a delineated basis for dismissal under Rule 12.[27] This statutory review is a *sua sponte* action by the court. As with all other aspects of § 1915, § 1915A, and when applicable, 42 U.S.C. § 1997e,

---

[26] *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).

[27] While their PLRA counterpart, 42 U.S.C. § 1997e, does allow the parties to move the court for dismissal of a conditions of confinement case as frivolous or malicious or for failure to state a claim, defendants did not rely on § 1997e in this motion.

this court immediately upon receipt of this prisoner case, reviewed Porter's complaint and claims for frivolousness and/or for failure to state a claim under the applicable screening standards. [28]

In addition, and contrary to defendants' urgings, pleadings filed by *pro se* litigants are to be liberally construed, and *pro se* complaints, however inartfully drafted they might be, are held to less stringent standards than formal pleadings drafted by lawyers.[29] With this caveat, a plaintiff's well-pleaded factual allegations in the complaint are to be taken as true for purposes of screening, but such deference does not extend to conclusory allegations, unwarranted factual inferences, or legal conclusions.[30] At the screening stage, the court "should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."[31] "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim."[32] Therefore, the court "should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."[33]

A complaint filed *in forma pauperis* "is not automatically frivolous within the meaning of Sec. 1915(d) because it fails to state a claim under Rule 12(b)(6)."[34] "The frivolousness standard, authorizing *sua sponte* dismissal of an *in forma pauperis* complaint 'only if the petitioner cannot make any rational argument in law or fact which would entitle him or her to relief, is a 'more

---

[28] *Mitchell v. Crowley*, 67 F. App'x 242 (5th Cir. 2003) ('28 U.S.C. § 1915A(a) provides that the district court's review is to take place 'before docketing, if feasible or, in any event, as soon as practicable after docketing,' and dismissal may be ordered before service of process.") (citing *In re Jacobs*, 213 F.3d 289, 290 (5th Cir. 2000)).

[29] *See Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[30] *DeMarco v. Davis*, 914 F.3d 383, 386-87 (5th Cir. 2019).

[31] *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (citations omitted).

[32] *Id*.

[33] *Id*. (citations omitted).

[34] *Neitzke*, 490 U.S. at 319.

lenient' standard than that of Rule 12(b)(6)."[35] "It is left to the discretion of the court to which the application is made to determine whether the petition on its face is frivolous or lacking in merit."[36]

At the time of filing, because of the gravity of Porter's assertions, the court in its discretion allowed Porter's claims to move forward through service of the complaint on defendants. Defendants have provided no basis for the court to reconsider that decision and the court declines to revisit its determination that the complaint was not on its face clearly frivolous or lacking in merit.

### B.    <u>No Designation of Defendants' Capacity</u>

In their motion, defendants recognize that Porter did not specify whether he is suing them in their individual or official capacities. Porter was not required by law to do so. "A person's capacity need not be pled except to the extent required to show the jurisdiction of the court."[37] In this circuit, when the complaint is unclear as to defendants' capacity, "the Court must look to the substance of the claims, the relief sought, and the course of the proceedings to determine in which capacity the defendant is sued."[38] Courts may consider whether the plaintiff seeks compensatory damages or other type of relief that would indicate that the plaintiff is suing defendants in a particular capacity.[39]

In this case, Porter seeks monetary damages, unspecified injunctive relief, and any other relief deemed just by the court. Porter's claims against the movants involve specific, personal

---

[35] *Id*. at 322-23 (quoting *Williams v. Faulkner*, 837 F.2d 304, 307 (7th Cir. 1988).

[36] *Startti v. United States*, 415 F.2d 1115, 1116 (5th Cir. 1969).

[37] *Robinson v. Hunt Cnty., Tex.*, 921 F.3d 440, 446 (5th Cir. 2019) (quoting *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973) (citing Fed. R. Civ. P. 9(a))); *see* Fed. R. Civ. P. 9(a)(1)(A).

[38] *Hopkins v. Guzman*, No. 06-5022, 2007 WL 2407247 at *4 (E.D. La. Aug. 17, 2007) (citing *United States ex rel. Adrian v. Regents of Univ. of Ca.*, 363 F.3d 398, 402-03 (5th Cir. 2004)); *Robinson*, 921 F.3d at 446 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

[39] *See Mayfield v. Tex. Dep't Crim. Just.*, 529 F.3d 599, 604-05 (5th Cir. 2008) (liberally construing claim for prospective injunctive relief as an official capacity claim); *Thomas v. Dallas Housing Auth.*, No. 14-4530, 2015 WL 2192785, at *5 (N.D. Tex. May 11, 2015) (factoring the plaintiff's request for compensatory damages in determining the suit was an individual capacity suit).

actions, such as physically moving him involuntary and throwing him to the ground back on his head, *i.e.,* assault, battery, and excessive force, all while acting under color of state law (a requirement for any § 1983 claim) and which led to his alleged injuries and constitutional violations. The claims include violation of the Eighth Amendment, his due process and equal protection rights, and cruel and unusual punishment, by defendants Lemire and Luper, who were directly involved in the alleged altercation and use of force, and due process and equal protection claims against Colonel Mitchell through his alleged fabricated report and incomplete ARP investigation. These claims as presented by Porter, accompanied by his request for monetary relief, appear to fall within the ambit of individual capacity claims.[40]

Furthermore, it would be inappropriate to assume that defendants were named in their official (rather than individual) capacity since Porter cannot assert an official capacity claim under § 1983 against these state employee/defendants. Indeed, as the Supreme Court held, an official capacity suit against a state actor "generally represent only another way of pleading an action against an entity of which an officer is an agent."[41] Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."[42] The moving defendants Lemire, Luper, and Mitchell, are correctional officers employed at RCC, which is a Louisiana Department of Corrections ("DOC") facility.[43] Thus, suit against these DOC employees in an

---

[40] *See Graham*, 473 U.S. at 165 ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.") (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-238 (1974) (at the motion to dismiss stage, a plaintiffs' claims that defendants "intentionally, recklessly, willfully and wantonly" acted "under color of state law" in a manner that deprived others of their rights without due process of law, when fairly read, "demonstrate they are seeking to impose individual and personal liability on the named defendants for what they claim - but have not yet established by proof - was a deprivation of federal rights by these defendants under color of state law.").

[41] *Id*. at 166 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)).

[42] *Id*.

[43] *See*, *e.g.*, *Francois v. Rigdon*, No. 08-3485, 2009 WL 1379723, at *4 (E.D. La. May 14, 2009); *Demouchet v. Rayburn Corr. Ctr.*, No. 07-1694, 2008 WL 2018294, at *3 (E.D. La. May 8, 2008).

official capacity would be suit against the DOC, which is a department within the Louisiana state government.[44]

Moreover, Defendants do not present the correct legal standards for stating or addressing official capacity claims against the State and its employees in their official capacity. Instead, defendants rely on the "policy and custom standard," more often referred to as a *Monell* standard,[45] which is relevant to "a municipality or a local government," as mentioned several times in defendants' memorandum.[46] *Monell* and its progeny, like *Spiller* and other cases cited in defendants' memorandum, is *not* the proper standard to address claims against the State and its employees in their official capacities. Instead, the proper consideration falls under the Eleventh Amendment.[47]

Under the Eleventh Amendment, "[c]itizens may not bring suit against a state or any instrumentality thereof without the state's consent."[48] "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'"[49] As noted above, the Louisiana DOC is a state agency for purposes of the Eleventh Amendment.[50] The United States Fifth Circuit Court of Appeals has explained:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts. When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief

---

[44] LA. STAT. ANN. § 36:401; *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996) ("Federal claims against state employees in their official capacities are the equivalent of suits against the state.").

[45] *Monell*, 436 U.S. at 694 ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."

[46] *Spiller*, 130 F.3d at 167; ECF No. 22-11, at ¶A, at 7; *id.*, ¶D, at 13 & 14.

[47] *See Will v. Michigan Dep't of St. Pol.*, 491 U.S. 58, 70 (1989) ("States are protected by the Eleventh Amendment while municipalities are not, . . . and we consequently limited our holding in *Monell* 'to local government units which are not considered part of the State for Eleventh Amendment purposes.'") (quoting *Monell*, 436 U.S. at 690 n.54).

[48] *Rodriguez v. Tex. Comm'n. on the Arts*, 199 F.3d 279, 280 (5th Cir. 2000) (citing U.S. CONST. amend. XI).

[49] *Med. RX/Sys., P.L.L.C. v. Tex. Dept. of State Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016) (citing *Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Will*, 491 U.S. at 71).

[50] *Champagne v. Jefferson Par. Sheriff's Office*, 188 F.3d 312, 313-14 (5th Cir. 1999); LA. STAT. ANN. § 36:403.

unless the state has waived its immunity.  By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court.  *See* LA. REV. STAT. ANN. § 13:5106(A).

Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power.  We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.[51]

While a State may expressly waive Eleventh Amendment immunity, Louisiana has declined to do so.[52]  Thus, Louisiana, its agencies, and its officials in their official capacity enjoy Eleventh Amendment immunity from suit for monetary damages.[53]

For similar reasons, a State, its agencies, and state officials in their official capacities generally are not considered "persons" for purposes of § 1983.  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."[54]  Therefore, a suit against the official is regarded as a suit brought directly against the State itself.[55]  For these reasons, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."[56]

As defendants correctly point out, a court cannot simply "create causes of action where there are none."  ECF No. 20-11, ¶B, at 9-10.  It would be inefficient for the court to assume the assertion of a claim that cannot exist as a matter of law to then dismiss that assumed claim for

---

[51] *Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 280-81 (5th Cir. 2002) (quotation marks and case citations omitted); *McGuire v. Lafourche Par. Work-Release Facility*, No. 09-6755, 2009 WL 4891914, at *3-4 (E.D. La. Dec. 4, 2009); *accord Champagne*, 188 F.3d at 313-14.

[52] *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Welch v. Dep't. of Highways*, 780 F.2d 1268, 1271-73 (5th Cir. 1986).

[53] *Will*, 491 U.S. at 66; *Hyatt v. Sewell*, 197 F. App'x 370 (5th Cir. 2006); *McGuire*, 2009 WL 4891914, at *3; *Levy v. Off. of Legis. Auditor*, 362 F. Supp. 2d 729, 735 (M.D. La. 2005); *Goins v. Louisiana*, No. 04-1159, 2004 WL 2694899, at *2-4 (E.D. La. Nov. 22, 2004); *Pennhurst St. Sch. v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185–86 (5th Cir. 1986).

[54] *Will*, 491 U.S. at 71 (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)).

[55] *Id*. (citing *Graham*, 473 U.S. at 165-166; *Monell*, 436 U.S. at 690 n.55).

[56] *Id*.

failure to state a claim.  As set forth above, the law would not recognize an official capacity claim under these facts against Lemire, Luper, or Mitchell.  And Porter's claims asserted and the course of these young proceedings do not indicate that he intended to do so.  For these reasons, the court declines to assume or find that Porter named the defendants in their official capacities, which claims that would be barred by the Eleventh Amendment.[57]  Considering the nature of the claims asserted and relief sought, the court finds that Porter's asserted claims against defendants Lemire, Luper, and Mitchell are asserted against them in their individual capacities.

### C.    Excessive Force Claims Against Luper and Lemire in their Individual Capacities

Again, Porter alleges that, on September 8, 2021, at approximately 5:37 a.m., he was being escorted by defendants Luper and Lemire down the tier on Sleet 3R after a prior incident between him and correctional officers.  He claims that Lemire and Luper began to move him back and forth to make it look as if he was resisting, and then maliciously and sadistically slammed him down on his head.  ECF No. 4 at 6; ECF No. 19, at 1.  This caused a laceration above his eye that began to bleed and required medical attention.  He also claims to have ongoing nightmares and to have been diagnosed with trauma as a result of the incident.  He asserts that the officers acted with deliberate indifference, used excessive force, committed assault and battery, and imposed cruel and unusual

---

[57] The court recognizes that a state official can be sued in an official capacity for declaratory and prospective injunctive relief.  *Ex Parte Young*, 209 U.S. 123 (1908).  In *Ex Parte Young*, the Supreme Court recognized an exception to Eleventh Amendment sovereign immunity when a plaintiff brings suit "for injunctive or declaratory relief against individual state officials acting in violation of federal law."  *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)).  To determine whether the *Ex Parte Young* exception applies, "a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" against a state actor in an official capacity.  *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019); *see also Morris v. Livingston*, 739 F.3d 740, 745-46 (5th Cir. 2014) (finding that the Texas Governor was not responsible for enforcement of statute requiring inmates to pay health care fees and was an improper defendant who was immune from suit seeking prospective injunctive relief).  In this case, Porter has not explained what injunctive relief he seeks much less alleged that this isolated, episodic incident on September 8, 2021, involves and on-going violation of a federal law.  The complaint is insufficient to establish an exception to the Eleventh Amendment bar, and as already resolved, presents no claim at all for the court to assume Porter meant to sue defendants in their official capacity.

punishment under the Eighth Amendment.  He also alleges that Mitchell failed to investigate his grievance complaint and instead fabricated a report to support or based on Luper and Lemire's false rules violations report.

In defendants' general discussions in their brief, it is unclear which of Porter's individual capacity claims they seek to dismiss.  They generally argue the basic pleading requirements for plaintiff to "'show that the defendants were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation . . .'"  ECF No. 22-11, ¶D, at 15.  They also argue in a conclusory manner that Porter has stated no plausible conduct by the defendants that caused or is connected to a constitutional violation.  *Id*. at 16.  Defendants do not address the legal requirements necessary to state any of the claims Porter asserts nor do they actually discuss the claims in their argument sections.  The defendants do not address the specific elements required to state a claim of excessive force under the Eighth Amendment or malfeasance, assault, or battery.  They also did not address the claims asserted against Mitchell.  Instead, defendants simply argue that the court cannot read into the complaint that a claim or constitutional violation was stated because the officers had a "reasonable belief of harm presented by Porter and his lack of compliance with the officers' orders."  ECF No. 22-11, ¶D, at 16.  The fact that defendants rely on this potential defense to the merits of Porter's excessive force claim simply confirms that Porter has stated a claim in his complaint that will, at some point, require opposition.

The Eighth Amendment forbids prison officials from using force against inmates that constitutes cruel and unusual punishment.[58]  When considering whether force is excessive, and

---

[58] *Maxwell v. Almanza*, No. 21-11239, 2023 WL 6172020, at *2 (5th Cir. Sept. 22, 2023) (citing *Hudson v. McMillian*, 503 U.S. 1, 5-7 (1992)).

therefore unconstitutional, the "core judicial inquiry" is not "whether a certain quantum of injury was sustained," but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm."[59]  An excessive force claim also involves subjective and objective components.[60]

"The subjective component requires the plaintiff to establish that the defendant acted maliciously and sadistically in an 'unnecessary and wanton infliction of pain.'"[61]  The Fifth Circuit recognizes that prison officials may violate an inmate's Eighth Amendment rights when they "use gratuitous force against a prisoner who has already been subdued,"[62] and has noted that "courts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force."[63]  For example, the court has held that an officer used excessive force when he punched a handcuffed prisoner in the face.[64]

The objective component requires plaintiff to demonstrate that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.[65]  While the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious injury,[66] an inmate must allege more than a *de minimis* injury from the altercation or excessive force in order to state an Eighth Amendment claim, unless the use of force is "repugnant to the conscience of mankind."[67]  To determine whether injury caused by

---

[59] *Hudson*, 503 U.S. at 7; *accord Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998); *Comeaux v. Sutton*, 496 F. App'x 368, 370 (5th Cir. 2012) (*per curiam*) (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37(2010)).
[60] *Mosley v. White*, 464 F. App'x 206, 211-12 (5th Cir. 2010) (*per curiam*).
[61] *Id*. (quoting *Hudson*, 503 U.S. at 8); *accord Maxwell*, 2023 WL 6172020, at *2.
[62] *Waddleton v. Rodriguez*, 750 F. App'x 248, 256 (5th Cir. 2018) (citation omitted).
[63] *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016).
[64] *Waddleton*, 750 F. App'x at 256 (citation omitted).
[65] *Id*.; *accord Payne v. Parnell*, 246 F. App'x 884, 887 (5th Cir. 2007).
[66] *Wilkins*, 559 U.S. at 34 (quoting *Hudson*, 503 U.S. at 4).  In *Wilkins*, the Supreme Court confirmed that the standards established in *Hudson* remain the law.
[67] *See generally Wilkins*, 559 U.S. at 34 (overturning lower court decision and finding injuries from officer's beating inmate consisting of bruised heel, lower back pain, increased blood pressure, migraine headaches, dizziness,

excessive force is more than *de minimis* under the Eighth Amendment, courts must consider the context in which the force was used and all the surrounding circumstances.[68]  Relevant factors include (1) the extent of injury suffered by the inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.[69]

Porter has alleged sufficient facts to state a claim of excessive force as a manifestation of cruel and unusual punishment under the Eighth Amendment.  He alleges that he was in a "two hands" escort by the officers when, without cause or provocation, they began to move him back and forth to give the appearance that he was resisting, and then slammed him on his head, causing him to suffer a laceration, before holding him down by his legs while continuing to shout that he was resisting.  Porter also indicates in his opposition memorandum that he has additional facts, such as the fact that he was handcuffed and restrained during the escort, which he can plead should the court require a more definite statement of his claim.  Under the foregoing factors, the allegations in Porter's complaint allege that he suffered more than a *de minimis* injury as the result of the use of force that was unwarranted and used maliciously and sadistically, and out of hatred for him, to cause him harm.

On a Rule 12(b)(6) review, the court may look beyond the complaint to examine documents attached to the complaint, documents attached to the motion to dismiss if referred to in the

---

psychological trauma, and mental anguish to be more than de minimis); *Hudson*, 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.") (internal quotations and citations omitted).

[68] *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

[69] *Hudson*, 503 U.S. at 7 (citation omitted); *see also Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999).

complaint and are central to the plaintiff's claims, as well as matters of public record.[70]  In this instance, the only documents attached to Porter's complaint are a handwritten copy of his December 26, 2021, grievance complaint and copies of the first and second step responses. Contrary to defendants' urging, there is no report from the ARP screening officer attached to the complaint or their motion to dismiss.  The only items attached to the motion to dismiss are copies of Porter's other federal complaints and related orders from those cases, none of which is central to his claims and thus not properly considered in the Rule 12(b)(6) analysis.

Likewise, defendants do not discuss what Porter was required to allege.  Instead, defendants offer a defense to his claim of excessive force by reference to the ARP first step response, presumably the one attached to plaintiff's complaint, and an ARP Screening Officer's report, which is not in the record before the court, to support their conclusion that the force used was justified, to wit:

> As detailed in the First Step response and the ARP Screening Officer's report, the incident in question involved officers using force and disbursing a chemical agent on Porter because he refused to remove an unknown object from his mouth and physically resisted the officers. Thus, there was reasonable belief by the officers that Porter was concealing a weapon, and therefore, removal of such weapon and restraining Plaintiff was necessary as there was reasonable belief that Porter could inflict harm onto himself or onto others.

ECF No. 22-11, ¶D, at 16.

The first step ARP response relied on by defendants does not address the facts of the incident between Porter and the two officers.  Instead, the first step response provides only a conclusory statement regarding the justification for the force used, and does not mention anything about the use of a chemical agent, an object being in Porter's mouth, nor a weapon.  ECF No. 4,

---

[70] *Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387 (citing *Collins*, 224 F.3d at 498-99); *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994).

at 8.  Neither does Porter's complaint.  Even were the Court inclined to convert the Rule 12(b)(6) motion to a summary judgment motion under rule 12(d) in order to consider that evidence, as mentioned previously, defendants fail to attach any document entitled ARP Screening Officer's report.

The court recognizes that the two[71] grievance responses contain some information that is not in Porter's complaint and may arguably counter, albeit in a conclusory manner, his allegations regarding the justification for the use of force.  It is generally accepted that, "[i]f an attached exhibit contradicts a factual allegation in the complaint, 'then indeed the exhibit and not the allegation controls.'"[72]  However, this court is not required to give deference to the conclusions reached in a prison administrative grievance process.[73]  The court finds Justice Stevens' comments in the *Woodford* dissent to be compelling:

> It is undisputed that the PLRA does nothing to change the nature of the federal action under § 1983; prisoners who bring such actions after exhausting their administrative remedies are entitled to *de novo* proceedings in the federal district court without any deference (on issues of law or fact) to any ruling in the administrative grievance proceedings.

While courts must accord deference to prison authorities in most matters of safety and security,[74] there is no requirement that the court give deference to the resolves made in the RCC or DOC administrative grievance responses.[75]

---

[71] Defendants do not rely or reference the second step response in their argument.  Except for the fact that there were two incidents on September 8, 2021, the circumstances described in the second step response from DOC are markedly different from the allegations in Porter's complaint and create more factual and credibility questions that cannot be resolved at this stage under Rule 12(b)(6) standards.

[72] *Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 345 (5th Cir. 2021) (quoting *United States ex rel. Riley*, 355 F.3d at 377).

[73] *Gennoe v. Washburn*, No. 19-478, 2021 WL 3130834, at *16 (M.D. Tenn. Jul. 31, 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 113 (2006) (Stevens, J., dissenting)).

[74] *Pell v. Procunier*, 417 U.S. 817, 823 & 827 (1974).

[75] *See also*, *Riley v. Roach*, 572 F. App'x 504, 507 (9th Cir. 2014) ("'when the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.'") (quoting *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).

Finally, under Rule 12(b)(6), the inquiry is not whether the claims have merit or ultimately will be proven. Instead, the court's focus is on whether, accepting the plaintiff's allegations as true, a plausible claim has been stated. In this instance, Porter has alleged a plausible claim of excessive force under the Eighth Amendment elements set forth above, which are not specifically addressed in defendants' memorandum. The defendants' motion to dismiss Porter's § 1983 claims of excessive force under the Eighth Amendment should be denied.

### D.    Qualified Immunity

Defendants assert, in the alternative, that the court should dismiss the claims on the basis that they are qualifiedly immune from suit because Porter "has not substantiated his allegations of violation of his constitutional rights." ECF No. 22-11, ¶E, at 18. They further seek dismissal of his § 1983 claims because he cited no law in his *pro se* pleadings and did not state facts to show that defendants violated a clearly established right.

A state official sued in his individual capacity for damages may assert a qualified immunity defense.[76] This immunity is defeated if the official violated clearly established statutory or constitutional rights, of which a reasonable person would have known.[77] In assessing the applicability of a qualified immunity defense, the court considers two factors: (1) whether the plaintiff has asserted a violation of a clearly established right;[78] and (2) whether defendants conduct as alleged was objectively reasonable in light of clearly established law at the time of the incident.[79] Even if a defendants' conduct actually violates a plaintiff's constitutional right, the defendants are entitled to qualified immunity if the conduct was objectively reasonable.[80] To

---

[76] *Procunier v. Navarette*, 434 U.S. 555, 561 (1978).
[77] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[78] *Siegert v. Gilley*, 500 U.S. 226 (1991).
[79] *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).
[80] *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272 (5th Cir. 1992).

overcome qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances."[81]  Louisiana's state law qualified immunity doctrine is "[i]dentical to the federal standard."[82]

Defendants urge the court to grant the motion on qualified immunity grounds under the first factor, claiming Porter failed to allege violation of a clearly established right.  However, there is little room for doubt that the Eighth Amendment prohibition of the use of excessive force to subdue a prisoner, especially if restrained, without provocation or cause was clearly established law on September 8, 2021.[83]  The facts alleged do not support a finding of qualified immunity where the prohibition to the type of force used was clearly established, as was the law holding that such force used maliciously and sadistically to cause harm to a compliant inmate, as Porter has alleged himself to be, would not have been reasonable.

Accordingly, the defendants are not entitled to dismissal based on qualified immunity at this time.  Defendant's Rule 12(b)(6) motion to dismiss should be denied.

---

[81] *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (internal quotation marks and citation omitted).

[82] *See Perrilloux v. City of Kenner*, No. 08-4287, 2009 WL 10680057, at *3 (E.D. La. Oct. 9, 2009).

[83] *Whitley v. Albers*, 475 U.S. 312, 320 (1986) (the law is clearly established that prison staff cannot cause the unnecessary and wanton infliction of pain upon a prisoner); *see Wingard v. Louisiana through Dep't of Pub. Safety & Corrs.*, 594 F. Supp. 3d 704 724-25 (M.D. La. 2022) ("At the time of this tackling Incident, it was clearly established that an officer may not use force on a restrained, compliant inmate.  Taking the facts in the light most favorable to Plaintiff, he was fully restrained and compliant when Holden tackled him, pinned him to the ground, and 'bashed' his head into the floor.") (citing *Aucoin v. Cupil*, No. 16-373, 2018 WL 1547347, at *3 (M.D. La. Mar. 29, 2018) ("Plaintiff has adequately demonstrated that Defendants may have used excessive force by punching and kicking Plaintiff even after he complied with their orders and was handcuffed," and "Defendants are also not entitled to qualified immunity because at the time of the incident, it was clearly established that inmates have a constitutional right to be free from the use of excessive force, and it is objectively unreasonable to assault a compliant and restrained inmate.")).

**IV.**    <u>**RECOMMENDATION**</u>

It is therefore **RECOMMENDED** that the Rule 12(b)(6) Motion to Dismiss (ECF No. 20) filed by defendants Master Sergeant Caleb Lemire, Master Sergeant Dustin Luper, and Colonel Thomas Mitchell be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[84]

New Orleans, Louisiana, this ___16th___ day of August, 2024.

_____
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[84] *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996). *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.