UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TOMARCUS PORTER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-504** |
| **CALEB LEMIRE, ET AL.** | **SECTION: "E" (2)** |

ORDER AND REASONS

Before the Court is a Report and Recommendation[1] issued by the assigned Magistrate Judge recommending Defendants Caleb Lemire ("Lemire"), Dustin Luper ("Luper"), and Thomas Mitchell's ("Mitchell") (collectively "Defendants") Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss[2] Plaintiff Tomarcus Porter's complaint[3] ("Plaintiff") be denied.[4] Defendants timely objected to the Magistrate Judge's Report and Recommendation.[5] For the reasons below, the Court **ADOPTS** the Report and Recommendation as its own.

BACKGROUND

I. Procedural background

Plaintiff is a prisoner currently held at David Wade Correctional Center. On March 25, 2024, Plaintiff, pro se and proceeding in forma pauperis,[6] filed a complaint pursuant to 42 U.S.C. § 1983 against Defendants individually.[7] Plaintiff's factual allegations in his

---

[1] R. Doc. 40.
[2] R. Doc. 20.
[3] R. Doc. 4; R. Doc. 19.
[4] R. Doc. 40.
[5] R. Doc. 43.
[6] On February 22, 2022, Plaintiff filed a complaint and motion for leave to proceed in forma pauperis. R. Doc. 1; R. Doc. 3. The Clerk of Court marked both deficient. R. Doc. 2. Plaintiff then resubmitted both his complaint and motion to proceed in forma pauperis. R. Doc. 4; R. Doc. 5. The Court granted Plaintiff's motion to proceed in forma pauperis. R. Doc. 6.
[7] R. Doc. 4; R. Doc. 40 at pp. 16-28. Neither Plaintiff nor Defendants object to the Magistrate Judge's finding that Plaintiff has only asserted individual capacity claims. This Court does not find the Magistrate Judge's finding clearly erroneous.

1

complaint stem from an incident that occurred on September 8, 2021.[8] Plaintiff brings claims for assault, battery, due process violations, excessive force, deliberate indifference, malfeasance, and failure to supervise against Defendants.[9]

With leave of Court, Plaintiff filed a supplemental complaint on June 17, 2024.[10] Defendants filed a Rule 12(b)(6) Motion to Dismiss Plaintiff's complaint ("Motion to Dismiss") two days later.[11] In this Motion to Dismiss, Defendants moved to dismiss only Plaintiff's § 1983 against Luper and Lemire for excessive use of force.[12] First, Defendants invited the Court to dismiss Plaintiff's complaint for frivolousness and failure to state a claim and therefore deliver Plaintiff's third "strike" under the Prison Litigation Reform Act ("PLRA"), which would bar him from future litigation.[13] Next, Defendants argued Plaintiff failed to state a proper official capacity claim.[14] Third, Defendants contended that Plaintiff failed to state a proper individual capacity claim.[15] Last, Defendants asserted that Plaintiff could not overcome Defendants' qualified immunity defense.[16]

On August 8, 2024, Plaintiff filed an untimely opposition.[17] This opposition contains Plaintiff's previous factual allegations and new allegations related to his claims.[18]

On August 16, 2024, the Magistrate Judge issued a Report and Recommendation recommending that Defendants' Motion to Dismiss be denied.[19] The Magistrate Judge

---

[8] R. Doc. 4; R. Doc. 19; R. Doc. 56.
[9] R. Doc. 4; R. Doc. 19; R. Doc. 56.
[10] R. Doc. 16; R. Doc. 18; R. Doc. 19.
[11] R. Doc. 20.
[12] R. Doc. 20; R. Doc. 20-11; R. Doc. 40 at pp. 4-6; R. Doc. 43.
[13] R. Doc. 20-11 at pp. 12-13.
[14] *Id.* at pp. 13-14.
[15] *Id.* at pp. 14-17.
[16] *Id.* at pp. 17-18.
[17] R. Doc. 35.
[18] *Id.*
[19] R. Doc. 40.

found the PLRA's three strike rule "inapposite" to the Defendants' Motion to Dismiss.[20] Moreover, the Magistrate Judge explained that frivolity is only relevant in a 28 U.S.C. § 1915 and 28 U.S.C. § 1915A screening analysis, not a Rule 12(b)(6) analysis.[21] In this case, the Magistrate Judge had previously screened Plaintiff's complaint and "allowed" it "to move forward through service."[22] The Magistrate Judge "decline[d] to assume or find that Porter named the defendants in their official capacities."[23]

The Magistrate Judge next analyzed Defendants' arguments for dismissal of Plaintiff's individual capacity claims.[24] She characterized these arguments as "conclusory" and stated that "Defendants do not address the legal requirements necessary to state any of the claims [Plaintiff] asserts."[25] After detailing the law on excessive force claims, like Plaintiff's, the Magistrate Judge concluded Plaintiff had "alleged sufficient facts to state a claim of excessive force . . . under the Eighth Amendment."[26] Although two grievance responses that Plaintiff attached to his complaint contained information that "arguably" countered Plaintiff's allegations, the Magistrate Judge noted that "this court is not required to give deference to the conclusions reached in a prison administrative grievance process."[27] The Magistrate Judge found that Plaintiff's allegations, accepted as true, stated a plausible claim for relief.[28] In closing, the Magistrate Judge rejected Defendants' qualified immunity argument because "the prohibition to the type of force used was clearly established, as was the law holding that such force used maliciously and

---

[20] *Id*. at pp. 11-14.
[21] *Id*. at pp. 14-16.
[22] *Id*. at p. 16.
[23] *Id*. at pp. 16-20.
[24] *Id*. at pp. 20-26.
[25] *Id*. at p. 21.
[26] *Id*. at pp. 21-23.
[27] *Id*. at p. 25 (citing *Gennoe v. Washburn*, No. 19-478, 2021 WL 3130834, at *16 (M.D. Tenn. Jul. 31, 2021)).
[28] *Id*. at p. 26.

sadistically to cause harm to a compliant inmate, as [Plaintiff] has alleged himself to be, would not have been reasonable."[29]

Defendants objected to the Report and Recommendation on August 30, 2024.[30] Defendants' first objection is to the Magistrate Judge's finding that Plaintiff stated a plausible excessive force claim.[31] Defendants object to the Magistrate Judge's decision to rely "solely on the allegations made in [Plaintiff]'s written narratives rather than the entirety of the pleadings he submitted himself."[32] Further, Defendants object to the Magistrate Judge's reliance on "new facts provided by" Plaintiff in his opposition to the Motion to Dismiss.[33]

Defendants also object to the Magistrate Judge's findings related to Plaintiff's allegations on Defendants' motives and fabrication of reports.[34] As part of this objection, Defendants object to the Magistrate Judge's recommendation to deny Defendants' Motion to Dismiss on Plaintiff's malfeasance claim and Plaintiff's claim against Mitchell.[35] Defendants object to the Magistrate Judge's finding related to qualified immunity.[36]

On October 10, 2024, after the Magistrate Judge issued the Report and Recommendation, Plaintiff filed a second supplemental complaint with leave of court.[37]

---

[29] *Id.* at pp. 26-27.
[30] R. Doc. 43. The docket also contains an objection that Plaintiff filed. R. Doc. 52. This objection is a response to the Defendants' objection rather than an objection to the Report and Recommendation. *Id.*
[31] R. Doc. 43-1 at pp. 7-15.
[32] *Id.* at pp. 9-10.
[33] *Id.* at pp. 10-11.
[34] *Id.* at pp. 15-23.
[35] *Id.* at pp. 18-23.
[36] *Id.* at pp. 23-25.
[37] R. Doc. 53; R. Doc. 55; R. Doc. 56. The second supplemental complaint neither names new defendants nor asserts new causes of actions and does not impact this order. *Id.*

## II. Factual background

On September 8, 2021 at approximately 5:37 a.m., Plaintiff alleges that Luper and Lemire escorted him by "2 hands escort[ ]" down the tier on Sleet 3R after a "previous incident."[38] Plaintiff alleges Luper and Lemire pulled him "in a back and foward [sic] motion to make it look like [he] was resisting."[39] Plaintiff alleges Luper and Lemire then "flip[ped] [sic] [him] dead on [his] head maliciously and sadistically making [his] eye started [sic] bleeding."[40] Plaintiff alleges he "was not even resisting when" he was restrained.[41] Plaintiff alleges Luper and Lemire "wrote up . . . a fabricated report" and displayed deliberate indifference.[42] Plaintiff alleges Mitchell "clearly ignored" Plaintiff's "ARP complaint and went to talking about the RVR Report."[43] In Plaintiff's supplemental complaint, Plaintiff adds that Luper and Lemire "held down" his legs.[44]

Plaintiff attached a handwritten grievance complaint dated December 6, 2021, a first step response form, and a second step response form to his complaint.[45] First, the grievance complaint contains allegations similar to Plaintiff's complaint and supplemental complaint in this suit.[46]

Second, RCC Warden Travis W. Day's first step response form, dated January 20, 2023, states that Plaintiff was involved in an incident on September 8, 2021 after Plaintiff "refused to comply with orders and physically resisted officers."[47] The first step response form further states that Mitchell reviewed a video of the incident involving Luper and

---

[38] R. Doc. 4 at p. 6.
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.* at p. 7; R. Doc. 19.
[43] R. Doc. 4 at p. 6.
[44] R. Doc. 19.
[45] R. Doc. 4 at pp. 7-9.
[46] *Id.* at p. 7.
[47] *Id.* at p. 8.

5

Lemire and "determined that the officers were justified in their use of force."[48] In this form, RCC Warden Travis W. Day denied Plaintiff relief.[49]

Third, the May 17, 2023 second step response form, issued by the Louisiana Department of Public Safety and Corrections, denied Plaintiff's appeal.[50] This form states that there were two "separate use of force incidents" on September 8, 2022. The first occurred when Plaintiff placed "an unknown object" in his mouth "and refused several direct verbal orders to remove said object."[51] "Staff" disbursed a "chemical agent" in response to Plaintiff's refusal to comply.[52] Medical staff then assessed Plaintiff and noted that Plaintiff had a "small laceration" on his eyebrow.[53] Plaintiff received treatment for this injury.[54] The second use of force occurred later in the same day after Plaintiff "chose to rip the metal frame" from his bed and "continuously cursed at security staff," "refused . . . direct verbal orders issued," and attempted "to spit on security staff."[55] In response, "security staff placed [Plaintiff] on the ground."[56] Plaintiff did not stop "thrash[ing] around" until more security staff arrived.[57]

Plaintiff added more allegations in his opposition to Defendants' Motion to Dismiss.[58] For the first time in this opposition, Plaintiff wrote that he was handcuffed and shackled at the time of the September 8, 2021 incident.[59] Plaintiff further claims that he

---

[48] *Id.*
[49] *Id.*
[50] *Id.* at p. 9.
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] R. Doc. 35.
[59] *Id.* at p. 2.

was "choke thrown to the ground" and "kneed [sic] in the back after he was handcuffed and secured."[60]

## **LEGAL STANDARD**

In reviewing the Magistrate Judge's Report and Recommendation, the Court must conduct a de novo review of any of the Magistrate Judge's conclusions to which a party has specifically objected.[61] As to the portions of the report to which no party objects, the Court need only determine whether such portions are clearly erroneous or contrary to law.[62]

In reviewing the Magistrate Judge's recommendations in connection with Defendants' Motion to Dismiss, the Court applies the Rule 12(b)(6) standard. Under Rule 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[63] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[64] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[65] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[66]

---

[60] *Id.*
[61] 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.").
[62] *Id.*
[63] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[64] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[65] *Id.*
[66] *Id.* at 663, 678 (citations omitted).

It is well established that "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers."[67] Regardless of whether the plaintiff is proceeding pro se or is represented by counsel, however, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent" dismissal.[68] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."[69] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[70]

## LAW AND ANALYSIS

### I. Defendants waived all arguments except arguments related to Plaintiff's § 1983 claims against Luper and Lemire for excessive use of force.

The Magistrate Judge found that "Defendants d[id] not specifically address [Plaintiff]'s claims against defendant Mitchell for failure to investigate his grievance complaint or [Plaintiff]'s apparent state law claims of assault, battery, and malfeasance against defendants Luper and Lemire."[71] Further, the Magistrate Judge found that Defendants "limited their request to dismissal of [Plaintiff]'s § 1983 claims because the force used by Luper and Lemire was justified."[72] Thus, the Magistrate Judge determined that Defendants Motion to Dismiss did "not request dismissal of the other claims," and did not resolve those claims "as part of [Defendants'] Rule 12(b)(6) motion."[73]

---

[67] *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).
[68] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[69] *Id.* (quoting FED. R. CIV. P. 8(a)(2)).
[70] *Cutrer v. McMillan*, 308 Fed. App'x 819, 820 (5th Cir. 2009) (per curiam) (unpublished) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).
[71] R. Doc. 40 at p. 4.
[72] *Id.*
[73] *Id.*

8

Although Defendants did make arguments related to Plaintiff's malfeasance claim and Plaintiff's claim against Mitchell for failure to investigate in Defendants' objection, Defendants did not specifically object to the above finding.[74] Nor does the Court find that the Magistrate Judge's finding that Defendants limited their Motion to Dismiss to Plaintiff's § 1983 claims for excessive use of force against Luper and Lemire was clearly erroneous. Indeed, the only claims Defendants specifically discuss in their Motion to Dismiss are Plaintiff's excessive force claims against Luper and Lemire, even if Defendants do mention Mitchell and Plaintiff's other claims.[75] Therefore the Court will confine its analysis to Defendants' arguments on Plaintiff's excessive force claims against Luper and Lemire.

## II. Plaintiff has sufficiently pleaded an excessive force claim against Luper and Lemire.

The Magistrate Judge found that Plaintiff properly alleged an excessive force claim against Luper and Lemire.[76] In reaching this finding, the Magistrate Judge considered Plaintiff's allegations in his complaint, supplemental complaint, and opposition to Defendants' Motion to Dismiss.[77] Plaintiff attached two grievance responses to his complaint.[78] Both contain information that contradicts some of Plaintiff's allegations.[79] The Magistrate Judge acknowledged this and stated that "[i]f an attached exhibit contradicts a factual allegation in the complaint, 'then indeed the exhibit and not the

---

[74] R. Doc. 43-1; *Curington v. Cain*, No. 13-5258, 2015 WL 3953190, at *1 (E.D. La. June 29, 2015) (citing § 636(b)(1)(C) ("[A] party who timely files written objections to a Magistrate Judge's report and recommendation is entitled to a de novo determination of those findings or recommendations to which the party *specifically* objects.") (emphasis added)).
[75] R. Doc. 20-11.
[76] R. Doc. 40 at pp. 20-26.
[77] *Id.*
[78] R. Doc. 4 at pp. 8-9.
[79] *Id.*

9

allegation controls.'"[80] Also the Magistrate Judge stated that she "is not required to give deference to the conclusions reached in a prison administrative grievance process."[81] Accordingly, the Magistrate Judge did not give deference to the grievance responses.[82]

Defendants object to the Magistrate Judge's finding that Plaintiff alleged a plausible excessive force claim, the Magistrate Judge's decision not to give deference to the grievance response Plaintiff attached to his complaint, and the Magistrate Judge's reliance on the additional allegations in Plaintiff's opposition to Defendants Motion to Dismiss.[83]

To state a claim under § 1983, a plaintiff must allege that the person or entity that deprived him of a federal right was a state actor and was acting under the color of law.[84] When a plaintiff asserts a § 1983 claim "against any private defendant, . . . the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law."[85]

The Eighth Amendment's prohibition of cruel and unusual punishment protects individuals from "unnecessary and wanton infliction of pain."[86] In determining whether specific conduct rises to the level of "excessive physical force," courts first evaluate whether the deprivation was objectively serious in light of "contemporary standards of decency."[87] Next, courts consider whether the officials acted with "a sufficiently culpable

---

[80] R. Doc. 40 at p. 25 (quoting *Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 345 (5th Cir. 2021)).
[81] *Id.* (citing *Gennoe v. Washburn*, No. 19-478, 2021 WL 3130834, at *16 (M.D. Tenn. Jul. 31, 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 113 (2006) (Stevens, J., dissenting))).
[82] *Id.* at pp. 25-26.
[83] R. Doc. 43 at pp. 9-15.
[84] *See, e.g., James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008); *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994).
[85] *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747 (5th Cir. 2001) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982)).
[86] *Ingraham v. Wright*, 430 U.S. 651, 671 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).
[87] *See Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992).

state of mind."[88] Generally, prison officials are liable for an inmate's claim of excessive force "[w]hen [they] maliciously and sadistically use force to cause harm, [and thereby violate] contemporary standards of decency."[89] "This is true whether or not significant injury is evident [because,] [o]therwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."[90] While the Fifth Circuit requires an injury to "be more than de minimis," it "need not be significant."[91] However, "when authorities use force to put down a prison disturbance," the excessive force inquiry turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."[92]

Plaintiff has sufficiently pleaded a plausible excessive force claim against Luper and Lemire. In Plaintiff's complaint, he alleges that Luper and Lemire were escorting him down a hall when, without provocation or reason, Defendants began moving Plaintiff "in a back and forward motion to make it look like [he] was resisting" and then "slammed" him "directly on [his] head."[93] Resultingly, Plaintiff's "eye started [b]leeding."[94] Plaintiff allegedly suffered an eye laceration and "trauma."[95] Plaintiff alleges he "was not even resisting when" Luper and Lemire restrained him.[96]

Not considering the additional facts in Plaintiff's opposition to Defendants' Motion to Dismiss, Plaintiff still states a plausible claim for relief. He alleges that, for no apparent

---

[88] *Id.* at 8.
[89] *Id.* at 9 (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).
[90] *Id.*
[91] *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999).
[92] *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320-21).
[93] R. Doc. 4 at p. 6.
[94] *Id.*
[95] *Id.*
[96] *Id.*

11

reason, Luper and Lemire pretended that Plaintiff was resisting their escort and then "slammed" Plaintiff on his head, causing Plaintiff to suffer an eye laceration and trauma. This shows Luper and Lemire's culpability because Plaintiff alleges the head slam was unprovoked. Plaintiff's stated injury also satisfies the de minimis standard.[97] Thus Plaintiff has properly pleaded an excessive force claim.

Moreover, the Court concurs with the Magistrate Judge's decision not to give conclusive weight to the grievance responses Plaintiff attached to his complaint.[98] As a pro se party, the Court must give Plaintiff deference and liberally construe his complaint and pleadings. Because of Plaintiff's pro se status and because "prisoners who bring [§ 1983] actions after exhausting their administrative remedies are entitled to *de novo* proceedings in the federal district court without any deference (on issues of law or fact) to any ruling in the administrative grievance proceedings," the Court will resolve the factual conflicts in the grievance responses and Plaintiff's complaint in favor of Plaintiff's complaint.[99]

### III. Plaintiff has pleaded sufficient facts to overcome Defendants' qualified immunity defense at the motion to dismiss stage.

The Magistrate Judge declined to dismiss Plaintiff's claims based on Defendants' assertion of qualified immunity.[100] The qualified immunity defense serves to shield government officials sued in their individual capacities and performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

[97] *See Chacon v. York*, 434 Fed. App'x 330, 332-33 (5th Cir. 2011).
[98] R. Doc. 40 at pp. 24-26.
[99] *Woodford*, 548 U.S. at 113 (Stevens, J., dissenting).
[100] R. Doc. 40 at pp. 26-27.

known."[101] Once raised, it is a plaintiff's burden to overcome a defendant's defense of qualified immunity.[102] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[103]

The Fifth Circuit has explained that "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."[104] To survive a motion to dismiss based on qualified immunity, the complaint must allege (1) the defendant's conduct violated the plaintiff's constitutional rights and (2) the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.[105] The second prong involves two inquiries: "whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law."[106] Each defendant's actions must be considered separately.[107] While the plaintiff bears the burden of negating the defense of qualified immunity once it has been raised, the Court must "accept all well-pleaded facts as true [and] view [] them in the light most favorable to the plaintiff."[108]

---

[101] *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004).
[102] *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994).
[103] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)
[104] *Id.* (citations omitted).
[105] *Alexander v. Eeds*, 392 F.3d 138, 144 (5th Cir. 2004).
[106] *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998).
[107] *Meadours v. Ermel.* 483 F.3d 417, 421 (5th Cir. 2007) (citing *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999)).
[108] *Converse v. City of Kemah, Tex.*, 961 F.3d 771 (5th Cir. 2020) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

13

For a right to be clearly established, "'existing precedent must have placed the statutory or constitutional question beyond debate.'"[109] "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[110] "Officials should receive the protection of qualified immunity 'unless the law is clear in the more particularized sense that reasonable officials should be put on notice that their conduct is unlawful.'"[111] "The court's focus, for purposes of the 'clearly established' analysis should be on 'fair warning': qualified immunity is unavailable 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"[112]

The "objective unreasonableness inquiry" calls for a determination of what a reasonable officer could have believed regarding the legality of his action, under the specific circumstances alleged.[113] The doctrine of qualified immunity will not protect "the plainly incompetent or those who knowingly violate the law."[114] "While qualified immunity was meant to protect officials performing discretionary duties, it should not present an insurmountable obstacle to plaintiffs seeking to vindicate their constitutional rights."[115]

"One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[116] Consequently, the Fifth

---

[109] *Id.*
[110] *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).
[111] *Id.* at 393 (quoting *Kinney*, 367 F.3d at 350).
[112] *Id.* at 392 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).
[113] *See Strickland v. City of Crenshaw, Miss.*, 114 F. Supp. 3d 400, 413 (N.D. Miss. 2015).
[114] *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)).
[115] *Lawmaster v. Ward*, 125 F.2d 1341 (10th Cir. 1997).
[116] *Backe*, 691 F.3d at 648 (citing *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986)).

Circuit "has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense."[117] "*After* the district court finds the plaintiff has so pled, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'"[118] A court may choose this "defer-and-discover approach 'when the defendant's immunity claim turns at least partially on a factual question' that must be answered before a ruling can issue."[119] The Fifth Circuit has further explained "[a]n order that simultaneously withholds ruling on a qualified immunity defense while failing to constrain discovery to develop claimed immunity is by definition not narrowly tailored."[120]

On a motion to dismiss, the court need not determine the facts of the case, as it must on a motion for summary judgment. Instead, when considering a motion to dismiss, the court need only ask whether a plaintiff's plausible allegations state a claim.[121] The Fifth Circuit has clarified that a motion for summary judgment on the issue of qualified immunity may be appropriate following a motion to dismiss following limited discovery.[122]

---

[117] *Id.*
[118] *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987)).
[119] *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) (quoting *Backe,* 691 F.3d at 648).
[120] *Backe*, 691 F.3d at 649.
[121] *Converse,* 961 F.3d at 780 ("A motion for summary judgment is, however, perfectly appropriate after limited discovery.").
[122] *Id.* at n.8; *see also Griffin v. Edwards*, 116 F.3d 479 (5th Cir. 1997) (affirming the denial of a motion to dismiss "without prejudice to the rights of the public defendants to move for summary judgment on the grounds of qualified immunity at a later date, after such limited discovery as the district court may deem necessary to determine whether a genuine issue exists as to the legality of the public defendants' conduct."); *Schultea v. Wood,* 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc) (noting that after allowing limited discovery, "the court can again determine whether the case can proceed and consider any motions for summary judgment under Rule 56").

First, the Court must analyze whether Plaintiff's complaint properly alleges that Luper and Lemire's conduct violated Plaintiff's constitutional rights. Plaintiff alleges an Eighth Amendment excessive force claim against Luper and Lemire.[123] The Eighth Amendment protects individuals from "unnecessary and wanton infliction of pain."[124] In determining whether conduct amounts to "excessive physical force," courts first evaluate whether the deprivation was objectively serious in light of "contemporary standards of decency."[125] Next, courts consider whether the officials acted with "a sufficiently culpable state of mind."[126] Generally, prison officials are liable for an inmate's claim of excessive force "[w]hen [they] maliciously and sadistically use force to cause harm, [and thereby violate] contemporary standards of decency."[127] While the Fifth Circuit requires an injury to "be more than de minimis," it "need not be significant."[128]

Plaintiff alleges a plausible excessive force claim. He alleges that, without reason, Luper and Lemire, acting together, pretended that Plaintiff was resisting their escort and then "slammed" Plaintiff on his head, causing Plaintiff to suffer an eye laceration and trauma.[129] This shows both Luper and Lemire's culpability because Plaintiff alleges he did not provoke the head slam. The injury Plaintiff alleges also satisfies the de minimis standard.[130] Thus Plaintiff has properly pleaded an excessive force claim. Therefore Plaintiff has satisfied the first prong of the qualified immunity test.[131]

---

[123] *See supra* at pp. 9-12.
[124] *Ingraham*, 430 U.S. at 671 (quoting *Estelle*, 429 U.S. at 103).
[125] *See Hudson*, 503 U.S. at 7-8.
[126] *Id.* at 8.
[127] *Id.* at 9 (citing *Whitley*, 475 U.S. at 327).
[128] *Gomez*, 163 F.3d at 924.
[129] R. Doc. 4 at p. 6.
[130] *See Chacon*, 434 Fed. App'x at 332-33; *see also Lewis v. Cain*, No. 07-279, 2007 WL 9723489, at *5 (M.D. La. Aug. 29, 2007), *R. & R. adopted*, 2007 WL 9723485 (M.D. La. Oct. 24, 2007).
[131] *Alexander*, 392 F.3d at 144; *Duperon v. Margoitta*, No. 06-3324, 2007 WL 3334347, at *11 (E.D. La. Nov. 7, 2007) ("Duperon has stated a plausible claim that the force used was excessive and that, in light of

16

On the second prong, the Court must (1) determine whether Defendants' conduct was objectively unreasonable (2) in light of clearly established law at the time of the incident. The prohibition on excessive use of force was clearly established precedent at the time of Plaintiff's alleged incident.[132] In 1986, the Court, in *Whitley v. Albers*, clearly established that prison staff cannot cause the "unnecessary and wanton infliction of pain."[133] The Court further opined that "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"[134]

Moreover, Luper and Lemire's conduct was objectively unreasonable in light of *Whitley*. Plaintiff's case is similar to *Chacon v. York*, in which the Fifth Circuit vacated the district court's grant of summary judgment in favor of the defendant on qualified immunity grounds and remanded.[135] The Fifth Circuit vacated the summary judgment grant because the plaintiff asserted that the defendant "used unnecessary force against him without provocation and that he suffered a laceration above his right eyelid" in a declaration made under penalty of perjury.[136] The Fifth Circuit reasoned that "the objective reasonableness of [the defendant's] conduct" depended upon "conflicting evidence concerning the circumstances surrounding the[ ] altercation." Such "a fact-sensitive inquiry" was inappropriate for resolution on summary judgment.[137] In holding

---

the malicious application of force, his injury was more than de minimis, thus satisfying the first prong of the qualified immunity test.").
[132] *Whitley*, 475 U.S. at 320.
[133] *Id.* at 319-21.
[134] *Id.* at 320-21 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *rejected in part by Graham v. Connor*, 490 U.S. 386 (1989)).
[135] 434 Fed. App'x at 332-33.
[136] *Id.*
[137] *Id.*

17

that the defendant was not entitled to qualified immunity, the Fifth Circuit implicitly found that the plaintiff had raised a genuine issue of material fact on whether the defendant's alleged conduct was objectively unreasonable in light of Supreme Court precedent.[138]

In this case, like in *Chacon*, Plaintiff's plausible allegations overcome Luper and Lemire's qualified immunity arguments.[139] Plaintiff alleges that both Luper and Lemire, jointly and at the same time, slammed him on his head without provocation and caused an eye laceration.[140] Since Plaintiff alleges that Luper and Lemire injured Plaintiff without provocation, he has alleged conduct that is objectively unreasonable in light of *Whitley*. "[T]he alleged malicious behavior, without provocation and not in response to a need to restore discipline, begs the question that the second prong of the qualified immunity test must be resolved at this stage in favor of" Plaintiff.[141]

The overarching qualified immunity analysis is the same for Luper and Lemire separately because Plaintiff alleges that Luper and Lemire acted together to slam Plaintiff on his head and that Plaintiff provoked neither Luper nor Lemire.[142] Plaintiff has pleaded sufficient facts to overcome Defendants' qualified immunity defense at the motion to dismiss stage.

---

[138] *See id.*
[139] R. Doc. 4 at p. 6; *Duperon*, 2007 WL 3334347, at *11-12; *Chacon*, 434 Fed. App'x at 332-33; *Fontenot v. Gusman*, No. 11-1772, 2012 WL 5196426, at *16 (E.D. La. Oct. 18, 2012); *see also Wingard v. La. ex rel. Dep't of Pub. Safety & Corr.*, 594 F. Supp. 3d 704, 723-25 (M.D. La. 2022).
[140] R. Doc. 4 at p. 6.
[141] *Duperon*, 2007 WL 3334347, at *11-12; *Fontenot*, 2012 WL 5196426, at *16 (denying qualified immunity where the defendant "push[ed], shov[ed], or slam[ed] an inmate into a wall or onto the floor of a cell . . . where there was no physical threat to the [defendant]").
[142] R. Doc. 4 at p. 6.

**IV.   The portions of the Magistrate Judge's Report and Recommendation not objected to are not clearly erroneous or contrary to law.**

In closing, the Court finds the Magistrate Judge's unobjected to findings are not clearly erroneous or contrary to law.

## CONCLUSION

**IT IS ORDERED** that the Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation[143] and Defendants' Motion to Dismiss[144] is **DENIED**.

**New Orleans, Louisiana, this 8th day of November, 2024.**

*Susie Morgan*
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[143] R. Doc. 40.
[144] R. Doc. 20.