**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**TOMARCUS PORTER,**                                    **CIVIL ACTION**
   **Plaintiff**

**VERSUS**                                                    **NO.  24-504**

**CALEB LEMAIRE, ET AL.,**                          **SECTION: "E" (2)**
   **Defendants**

## ORDER AND REASONS

Before the Court is a Motion to Dismiss for Failure to State a Claim filed by Defendants Caleb LeMaire, Dustin Luper, Thomas Mitchell, and Lance Wallace (collectively "Defendants").[1] Plaintiff Tomarcus Porter ("Plaintiff") filed an opposition.[2] Defendants filed a reply.[3]

## BACKGROUND

This case arises out of three alleged uses of excessive force against Plaintiff and the failure to investigate the uses of force and to train, supervise, and discipline the officers responsible. Plaintiff makes the following allegations in his Amended Complaint.[4] At the time of these alleged incidents, Plaintiff was an inmate at Rayburn Correctional facility in Angie, Louisiana ("Rayburn").[5] Defendants worked as correctional officers at the facility.[6] Plaintiff alleges that, on September 6, 2021, he engaged in a verbal altercation with Charles Wallace, a correctional officer at the facility who is the father of Defendant Lance Wallace.[7] Plaintiff alleges Charles Wallace called Plaintiff a racial slur used to describe

---

[1] R. Doc. 124.
[2] R. Doc. 128.
[3] R. Doc. 130.
[4] R. Doc. 132.
[5] *Id.* at ¶ 3.
[6] *Id.* at ¶¶ 4-7.
[7] *Id.* at ¶¶ 25-35.

African-American people.[8] Plaintiff alleges that he responded that Charles Wallace's wife "was one," meaning that Charles Wallace's wife also is Black, and that Charles Wallace did not deserve his wife.[9] Plaintiff alleges Charles Wallace ordered Plaintiff to come to the bars of his jail cell so he could restrain Plaintiff.[10] Plaintiff alleges he responded, "f*** you, get rank," meaning that Charles Wallace should retrieve a superior officer.[11] Plaintiff alleges Charles Wallace responded, "watch my smoke," and then left the area.[12]

Plaintiff alleges that Defendants retaliated against Plaintiff for engaging in this verbal altercation.[13] Plaintiff alleges Defendants' retaliation began with Lance Wallace— the son of Charles Wallace—LeMaire, and Luper intentionally harassing Plaintiff on the evening of September 7 and the early morning of September 8, 2021.[14] Plaintiff alleges these three officers hit objects against the pipe chase behind Plaintiff's cell to prevent him from sleeping that evening and early morning.[15]

Plaintiff alleges this harassment escalated into physical abuse. Plaintiff alleges that, at approximately 5:15 a.m. on September 8, 2021, Lance Wallace and Luper approached Plaintiff's cell after observing him with a coffee cup they believed he was not authorized to possess.[16] Plaintiff alleges Lance Wallace ordered him to hand over the cup and Plaintiff complied with this order.[17] Plaintiff alleges Lance Wallace ordered him out of his cell, ostensibly so he could search Plaintiff's cell.[18] Plaintiff alleges that Lance

---

[8] *Id.* at ¶ 28.
[9] *Id.* at ¶¶ 29-30.
[10] *Id.* at ¶ 31.
[11] *Id.* at ¶ 32.
[12] *Id.* at ¶¶ 34, 36.
[13] *Id.* at ¶ 37.
[14] *Id.*
[15] *Id.* at ¶ 38.
[16] *Id.* at ¶ ¶ 43, 45.
[17] *Id.* at ¶¶ 46-47.
[18] *Id.* at ¶ 48.

Wallace then, intentionally and without provocation, sprayed a dangerous chemical agent called "Phantom" on him and placed a Lexan shield in front of his cell to cause maximum impact.[19] Plaintiff alleges the use of the chemical agent affected his breathing, anxiety and heart rate.[20] Plaintiff alleges that, following the use of the chemical spray, Lance Wallace and Luper escorted Plaintiff to the infirmary, at or around 5:30 a.m.[21]

Plaintiff alleges that, at or around 5:37 a.m., LeMaire, Luper, and Lance Wallace escorted him back to his cell from the infirmary.[22] Plaintiff alleges that LeMaire, Luper and Lance Wallace moved him in a back-and-forth motion while he was walking to make it appear as if he was resisting them.[23] Plaintiff alleges the officers used this apparent resistance as a justification to tackle him to the ground and that Lemaire then kneeled on his back.[24] Plaintiff alleges this force caused lacerations to his face.[25]

Plaintiff alleges a third excessive use of force occurred at approximately 9:52 p.m. that same day. Plaintiff alleges he informed Lieutenant Brian Nichols that he was experiencing severe chest pain.[26] Plaintiff alleges that Nichols and Lance Wallace escorted him to the infirmary.[27] Plaintiff alleges that, while escorting him, the officers tackled him to the ground without any provocation.[28] Plaintiff alleges one of the officers—he does not allege which one—pressed his knee into Plaintiff's back, and that both officers repeatedly punched him in the face and jaw, causing an edema to his right jaw and a laceration to his

---

[19] *Id.* at ¶ ¶ 50, 51.
[20] *Id.* at ¶ 66.
[21] *Id.* at ¶ 65.
[22] *Id.* at ¶ 74.
[23] *Id.* at ¶ 75.
[24] *Id.* at ¶¶ 75-90.
[25] *Id.* at ¶ 94.
[26] *Id.* at ¶ 96.
[27] *Id.* at ¶ ¶ 101, 104.
[28] *Id.* at ¶ 107.

right eyebrow.[29]

Plaintiff alleges Lance Wallace, Luper, and LeMaire used excessive force against Plaintiff to retaliate against him for his comments to Charles Wallace.[30] Plaintiff alleges Charles Wallace's son, Lance Wallace, participated in all three alleged incidents of excessive force.[31] Plaintiff alleges that, sometime after the three incidents, Lance Wallace said to him, "If you dare say anything about my mom or dad again, I'm going to f*** you up."[32]

Plaintiff alleges he filed several administrative remedy procedure complaints ("ARPs") against Defendants, claiming that Defendant officers used excessive force against him.[33] Plaintiff filed ARP-748 regarding the 5:37 a.m. incident and ARP-749 regarding the 9:52 p.m. incident.[34] Plaintiff alleges Defendant Mitchell had supervisory duties and investigated uses of force at Rayburn.[35] Plaintiff alleges Mitchell received and reviewed the ARPs filed by Plaintiff and conducted use of force reviews.[36] Plaintiff alleges Defendant Mitchell reviewed these ARPs between January 2021 and September 2021, but took no disciplinary action against any of the officers involved.[37] Plaintiff alleges Lance Wallace was the supervisor of Luper and LeMaire but failed to take any disciplinary action against any of the officers involved in the alleged misconduct.[38] Plaintiff alleges Mitchell and Lance Wallace failed to discipline, supervise, and train officers at Rayburn.[39]

---

[29] *Id.* at ¶¶ 109-113.
[30] *Id.* at ¶ 42.
[31] *Id.* at ¶¶ 50, 51, 85, 87, 90, 106, 107, 109, and 110.
[32] *Id.* at ¶ 127.
[33] *Id.* at ¶ 13.
[34] *Id.* at ¶ 14.
[35] *Id.* at ¶¶ 15-17.
[36] *Id.* at ¶ 17.
[37] *Id.* at ¶ 18.
[38] *Id.* at ¶¶ 21-23.
[39] *Id.* at ¶¶ 178-179.

Plaintiff filed the present action *pro se* on February 22, 2024, bringing claims related to the 5:37 a.m. incident against Lance Wallace, Caleb LeMaire, Dustin Luper, and Thomas Mitchell.[40] Plaintiff filed another lawsuit in this district court before Judge Vance on April 15, 2024, bringing claims related to the 9:52 p.m. incident against Lance Wallace, and three officers not named in this present case—Jason Williams, Brian Nichols, and Beau Bowmen.[41] On December 6, 2024, Judge Vance dismissed Plaintiff's claims against Lance Wallace, Nichols, and Bowmen without prejudice for failure to prosecute.[42] On July 14, 2025, Judge Vance dismissed Plaintiff's claims against Williams, holding that Plaintiff had failed to state a plausible claim for relief against him.[43]

After counsel was appointed to represent him in this matter, on December 19, 2025, Plaintiff moved for leave to file an amended complaint in order to meet "substantive and procedural pleading requirements and to meet counsel's ethical duty of vigorous advocacy on behalf of Plaintiff."[44] The Court granted Plaintiff's motion, and Plaintiff filed his Amended Complaint.[45] In his Amended Complaint, Plaintiff brings claims related to the 5:15 a.m. use of force, the 5:37 a.m. use of force, and the 9:52 p.m. use of force.[46] Plaintiff brings claims under 42 U.S.C. § 1983, alleging Lance Wallace, Luper, and LeMaire violated his Eighth Amendment rights.[47] Plaintiff brings a claim under 42 U.S.C. § 1983 against Lance Wallace and Mitchell for failure to supervise, train, or discipline the officers who used excessive force on him.[48] Plaintiff also asserts state law claims of assault

---

[40] R. Doc. 4.
[41] *See* 24-cv-957, *Porter v. Williams, et al.*, Eastern District of Louisiana, R. Doc. 1.
[42] *Id.* at R. Doc. 25.
[43] *Id.* at R. Doc. 55.
[44] R. Doc. 110.
[45] R. Doc. 122.
[46] *See* R. Doc. 132.
[47] *Id.* at ¶¶ 164-171.
[48] R. Doc. 122 at ¶¶ 178-180.

and battery as well as claims for intentional infliction of emotional distress and negligent infliction of emotional distress against Lance Wallace, Luper, and LeMaire.[49]

Defendants filed the present motion to dismiss on February 10, 2026.[50] Defendants request this Court dismiss all of Plaintiff's state and federal claims related to the 5:15 a.m. use of force and the 9:52 p.m. use of force.[51] Defendants argue that, because Plaintiff failed to bring claims related to the 5:15 a.m. and 9:52 p.m. incident within the applicable statute of limitations period, the Court should dismiss all claims related to those two incidents.[52] Defendants further argue that, because Plaintiff did not file an ARP for the 5:15 a.m. incident, Plaintiff failed to exhaust his administrative remedies related to that alleged incident.[53] As a result, Defendants argue Plaintiff's claims related to the 5:15 a.m. use of force are procedurally barred for his failure to exhaust administrative remedies and Plaintiff's claims relating to that incident should be dismissed for that reason, as well.[54]

Plaintiff acknowledges that his original complaint only specifically mentions claims related to the 5:37 a.m. incident.[55] However, Plaintiff argues that, because the three September 8, 2021 incidents arise as retaliation for a common event—his verbal altercation with Charles Wallace—Fed. R. Civ. P. 15 directs that his amended pleading

---

[49] *Id.* at ¶¶ 183-185, 189-191, 193-197.
[50] R. Doc. 124.
[51] *Id.* at p. 1.
[52] *Id.* at pp. 6-8.
[53] *Id.* at pp. 5-6.
[54] *Id.* In their motion, Defendants also request that the Court dismiss any claims against Thomas Mithcell, as Plaintiff's complaint brought claims against Mitchell in his official, not his individual, capacity. R. Doc. 124 at p. 1. However, Defendants stated that they would not oppose this Court allowing Plaintiff to amend his complaint to reflect that he brings claims against Mithcell in his individual capacity. R. Doc. 130 at p. 7. At the oral argument for Defendants' motion, the Court granted Plaintiff leave to amend his complaint solely for the purpose of clarifying that the claims asserted against Mitchell are asserted in Mitchell's individual capacity only. R. Doc. 133. Plaintiff filed another amended complaint reflecting this order. R. Doc. 132.
[55] R. Doc. 128 at p. 1.

relates back to the date of his original pleading.[56] In addition, Plaintiff argues that, while he did not file an ARP for the 5:15 a.m. incident, in the response to the ARPs Plaintiff did file, the reviewing body referenced the 5:15 a.m. use of force.[57] As a result, Plaintiff argues Defendants had notice of the 5:15 a.m. incident, which is sufficient evidence that he has exhausted his administrative remedies for this alleged excessive use of force.[58]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[59] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[60] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[61] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[62] Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"[63] or "naked assertion[s]"[64] devoid of "further factual enhancement"[65] are not sufficient.

---

[56] *Id.* at pp. 2-6.
[57] *Id.* at pp. 7-10.
[58] *Id.*
[59] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[60] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[61] *Id.*
[62] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[63] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[64] *Twombly*, 550 U.S. at 557.
[65] *Id.*

The movant bears the burden of showing that dismissal is warranted.[66] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[67] However, "legal conclusions can provide the framework of a complaint, [if] they [are] supported by factual allegations."[68] "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[69] "Although detailed factual allegations are not required," "[d]ismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[70] Whether a plaintiff "will be able to offer sufficient proof to support [his or her] claims is more appropriate in the context of a motion for summary judgment or a trial on the merits" rather than in a motion to dismiss.[71] "[I]ntensive disputes of material fact . . . are usually more appropriate for summary judgment . . . ."[72] In addition, "[m]otions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'"[73]

## LAW AND ANALYSIS

I.    **Plaintiff exhausted his administrative remedies with respect to the 5:15 a.m. use of force.**

The Court will not dismiss Plaintiff's claims regarding the 5:15 a.m. use of force for failure to exhaust administrative remedies. The Prison Litigation Reform Act of 1995

---

[66] *Cantu v. Guerra*, No. SA20CV0746JKPHJB, 2021 WL 2636017, at *1 (W.D. Tex. June 25, 2021).
[67] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).
[68] *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.
[69] *Iqbal*, 556 U.S. at 679.
[70] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (per curiam) (citations omitted).
[71] *Smith v. GE Healthcare, Inc.*, No. 3:19-CV-00492, 2019 WL 4565246, at *7 (W.D. La. Sept. 4, 2019).
[72] *Dong Phuong Bakery, Inc. v. Gemini Soc'y, LLC*, No. CV 21-1109, 2022 WL 898750, at *5 (E.D. La. Mar. 28, 2022).
[73] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

(PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983. . .or any other Federal law, by a prisoner. . .until such administrative remedies as are available are exhausted."[74] The Supreme Court has held that this exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[75] Pursuant to Louisiana Administrative Code Title 22, PT. I, § 325, prisoners in Louisiana exhaust their administrative remedies through the ARP system.[76] The ARP is a three-step process. First, after an inmate files an ARP, an ARP Screening Officer reviews it and may reject it if it fails to meet certain criteria.[77] If the officer "accepts" an ARP, it proceeds to the "First Step." This process involves an investigation by a prison staff member, who detail the results of the investigation in a "First Step Response" form.[78] If the prisoner is unsatisfied with the response, the prisoner may appeal to the Secretary of the Department of Corrections, who provides his, or his designee's, conclusion on the "Second Step Response" form.[79] After receiving the Second Step Response, if the prisoner remains unsatisfied, the prisoner may file suit.[80] "[A] grievance should be considered sufficient [to exhaust administrative remedies] to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit."[81]

Defendants argue Plaintiff failed to exhaust his administrative remedies regarding

---

[74] 42 U.S.C. § 1997e(a).
[75] *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).
[76] *See* La. Admin. Code Tit. 22, PT. I, § 325 (2013); *Abbott v. Babin*, 587 Fed. App'x 116, 118 (5th Cir. 2014).
[77] *Id.* at I.
[78] *Id.* at J(1)(a).
[79] *Id.* at J(1)(b).
[80] *Id.* at J(1)(b)(iv).
[81] *Johnson v. Johnson*, 385 F.3d 503, 516-17 (5th Cir. 2004).

the 5:15 a.m. incident because Plaintiff did not file, nor allege that he filed, an ARP for this specific incident. [82]

Plaintiff argues that, in response to his ARP regarding the 5:37 a.m. incident, Defendant Mitchell investigated not only the 5:37 a.m. use of force, but also the 5:15 a.m. use of force.[83] Plaintiff argues that, after his investigation, Mitchell submitted his conclusions to the staff member issuing the First Step Response and attached a use of force review for the 5:15 a.m. incident and a use of force review for the 5:37 a.m. incident.[84] Plaintiff argues the prison staff member who issued the First Step Response to his 5:37 a.m. ARP considered both use of force reports and Mitchell's conclusions in reaching his findings.[85] Plaintiff further argues that a representative from the Department of Corrections also specifically addressed the 5:15 a.m. incident in the Second Step Response.[86] Because the prison staff member who issued Plaintiff's First Step Response reviewed documentation regarding the 5:15 a.m. use of force and because the Department of Corrections representative specifically addressed the 5:15 a.m. use of force in the Second Step Response, Plaintiff argues Defendants were sufficiently on notice of Plaintiff's 5:15 a.m. excessive use of force claim.[87] As a result, Plaintiff argues he sufficiently exhausted his administrative remedies for the 5:15 a.m. incident.[88]

The Court finds Plaintiff has exhausted his remedies for the 5:15 a.m. incident. The Fifth Circuit has emphasized that a grievance is sufficient to the extent that it puts officials

---

[82] R. Doc. 124-1 at p. 5.
[83] R. Doc. 128 at pp. 7-8.
[84] *Id.*
[85] *Id.* at p. 8. The First Step Response is signed by the "Unit Head" but, as the signature is not legible, the Court is unable to identify the person who signed the document. R. Doc. 128-3.
[86] *Id.* The Second Step Response is signed by the Department of Correction's Secretary or his "designee." R. Doc. 128-1. The signature on the Second Step Response form also is illegible, and the Court is unable to identify the person who signed the document.
[87] *Id.*
[88] *Id.* at p. 9.

on notice of the alleged conduct that a plaintiff later brings in a lawsuit.[89] Moreover, the purpose of the exhaustion requirement is not to create a demanding hurdle for plaintiffs to clear before they can bring suit; it is to provide administrators with an opportunity to address a prisoner's complaints before the dispute reaches the litigation stage.[90] The review of Plaintiff's ARP and the use of force report for the 5:37 a.m. incident notified officials of the allegations Plaintiff brings in this lawsuit surrounding the 5:15 a.m. incident. Thomas Mitchell conducted an administrative review of Plaintiff's 5:37 a.m. ARP and submitted his findings to the prison official issuing the First Step Response[91]— Mitchell included the use of force report for the 5:15 a.m. incident as part of this submission.[92] In addition, the Second Step Response itself discusses the 5:15 a.m. chemical spray incident and found that no further investigation into the incident was warranted.[93] Although Plaintiff did not file an ARP specifically for the 5:15 a.m. use of force, the Department of Corrections was aware of and took the opportunity, when reviewing Plaintiff's 5:37 a.m. ARP, to address the allegations surrounding the 5:15 a.m. incident. Furthermore, both incidents clearly are related. The 5:37 a.m. use of force occurred a mere twenty minutes after the 5:15 a.m. incident and happened as a direct result of Plaintiff needing medical treatment for injuries he sustained during the 5:15 a.m. chemical spray. In addressing the 5:37 a.m. incident, the prison staff member and the Department of Corrections representative clearly were aware of the 5:15 a.m. incident. Accordingly, the reviews of Plaintiff's 5:37 a.m. ARP satisfy the purpose of the administrative exhaustion requirement—to ensure officers have notice of Plaintiff's

---

[89] *Johnson*, 385 F.3d at 516-19.
[90] *See* id. at 518.
[91] R. Doc. 128-3.
[92] R. Doc. 128-2 at p. 4.
[93] R. Doc. 128-1.

claims before litigation commences.[94] Because the officers had notice of Plaintiff's 5:15 a.m. claims and "[m]otions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted,'"[95] the Court finds Defendants have failed to meet their burden of proving that Plaintiff failed to exhaust his administrative remedies with respect to the 5:15 a.m. incident.[96]

## II.    The allegations of Plaintiff's Amended Complaint relate back to Plaintiff's original complaint.

Plaintiff's claims are not barred by the statute of limitations. As there is no federal statute of limitations for § 1983 claims, Louisiana's prescriptive period for personal injury claims is applicable to Plaintiff's § 1983 claims.[97] At the time the alleged incidents occurred, personal injury claims were governed by La. C.C. art. 3492, which provided for a prescriptive period of one year from the date of injury or damage. Accordingly, under Louisiana law, Plaintiff's § 1983 claims are subject to a one-year prescriptive period.[98]

---

[94] *See Johnson*, 385 F.3d at 516-19.

[95] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

[96] In addition, Defendants may not be entitled to dismissal because they failed to provide affirmative evidence that Plaintiff failed to exhaust his administrative remedies. The Supreme Court has held that failure to exhaust administrative remedies is an affirmative defense on which a defendant bears the burden of proof. *Jones v. Bock*, 549 U.S. 199, 212 (2007). The Fifth Circuit has held that "where the complaint does not clearly show [] the inmate failed to exhaust administrative remedies, it is defendants' job to raise and prove such an affirmative defense." *Torns v. Miss. Dept. of Corr.*, 301 Fed. App'x 386, 389 (5th Cir. 2008). In *Rebaldo v. Jenkins*, a court in this district found that the defendants had failed to establish a failure to exhaust defense when defendants relied on the fact that the plaintiff's complaint had not demonstrated exhaustion. 660 F. Supp. 2d 755, 765 (E.D. La. 2009). The court noted that defendants relied solely on the plaintiff's complaint and did not provide any evidence that the complaint contained a complete record of plaintiff's grievances, such as an affidavit or declaration attesting to that effect. In the present matter, Plaintiff does not allege in his Amended Complaint that he filed an ARP for the 5:15 a.m. incident. On the other hand, Defendants provided no affidavit or declaration stating that the complete record of Plaintiff's administrative grievances does not include an ARP regarding the 5:15 a.m. incident. As a result, Defendants may have failed to carry their burden of showing that Plaintiff failed to administratively exhaust his claims. In any event, the Court need not decide this issue, as the Court finds Plaintiff administratively exhausted his 5:15 a.m. claims through the ARP process for the 5:37 a.m. and 9:52 p.m. incidents.

[97] *Marceaux v. Lafayette City-Par. Consol. Gov't,* 921 F. Supp. 2d 605, 645 (W.D. La. 2013) (citing *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir.2007); *Piotrowski v. City of Houston,* 51 F.3d at 514 n. 5; *Rodriguez v. Holmes,* 963 F.2d 799, 803 (5th Cir.1992).

[98] *Id.*

Likewise, La. C.C. art. 3492 governed Plaintiff's state law tort claims, and at the time of Plaintiff's injuries, provided that such claims were subject to a prescriptive period of one year.[99]

In this matter, Plaintiff filed an ARP regarding the 5:37 a.m. use of force on December 7, 2021, three months after his alleged injury.[100] "The limitations period is suspended while an ARP is pending because the requirement that an inmate exhaust administrative remedies before filing creates a statutory impediment to filing suit. The limitations period begins to run again when the final agency decision is delivered."[101] Accordingly, the statute of limitations was tolled while Plaintiff awaited final agency decision on his ARP.

Plaintiff received notification in a Second Step Response Form dated May 24, 2023 that the Louisiana Department of Corrections did not find the officer Defendants used excessive amounts of force in the 5:37 a.m. incident.[102] On February 22, 2024, Plaintiff filed his original complaint—8 months and three weeks after receiving a final agency decision on his ARP relating to the 5:37 a.m. incident.[103] As Plaintiff waited three months to file his ARP and eight months and three weeks to file his original complaint after receiving final agency decision on the ARP, for purposes of the statute of limitations, Plaintiff filed his original complaint eleven months and three weeks after suffering

---

[99] Louisiana law regarding prescription was amended effective July 1, 2024 to extend the one year prescriptive period to a two-year prescriptive period for delictual actions. *See* La. C.C. art. 3493.1. However, these changes apply prospectively only to delictual action arising after July 1, 2024. *See* 2024 La. Acts, No. 423, §§ 1 and 2 (providing that the extended period "shall be given prospective application only and shall apply to delictual actions arising after the effective date of this Act" and that "[t]his Act shall become effective on July 1, 2024").

[100] R. Doc. 128-3. The ARP provided by the parties to the Court shows a stamp that it was received on December 7, 2021. Plaintiff dated the ARP "12-6-2022" but this is obviously an error.

[101] *Shank v. LeBlanc*, No. CV 23-108-SDD-SDJ, 2024 WL 5337650, at *3 (M.D. La. Oct. 23, 2024), *report and recommendation adopted,* No. CV 23-108-SDD-SDJ, 2025 WL 223770 (M.D. La. Jan. 16, 2025)

[102] R. Doc. 124-2 at p. 17.

[103] R. Doc. 4.

injury.[104] Accordingly, Plaintiff filed this suit for his 5:37 a.m. claims within the one year prescriptive period.[105]

Plaintiff did not bring claims in this lawsuit specifically describing the 5:15 a.m. and 9:52 p.m. incidents until January 27, 2026,[106] over two years after receiving the final results of the Department of Corrections' investigation into the alleged incidents.[107] However, Plaintiff's claims for these incidents will survive the statute of limitations if they relate back to Plaintiff's original filing.[108] Fed. R. Civ. P 15 states that an amendment to a pleading relates back to the date of the original pleading when "the law that provides the applicable statute of limitations allows relation back" or when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[109] Accordingly, an amendment to a pleading may relate back to the date of the original pleading pursuant to either Louisiana state law or under the Federal Rules of Civil Procedure.[110]

La. C.C.P. art. 1153 provides that "[w]hen the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.[111] "It is well established that [La. C.C.P] art. 1153 permits amendment despite technical prescriptive bars where the original pleading gives fair notice of the general fact situation out of which the amended claim arises."[112]

---

[104] *Shank*, 2024 WL 5337650, at *3. Precisely, Plaintiff filed his complaint 364 days after suffering injury.
[105] R. Doc. 1. Defendants do not argue Plaintiff's 5:37 a.m. claims are barred by the statute of limitations.
[106] R. Doc. 122.
[107] R. Doc. 128-1.
[108] *Rieth v. Munguia*, 2023-0547, p. 6 (La. App. 4 Cir. 5/30/24), 391 So.3d 39, 45.
[109] Fed. R. Civ. P. 15(c)(1)(A-B).
[110] *See id.*
[111] La. C.C.P. Art. 1153.
[112] *Comeaux v. Poindexter*, 527 So. 2d 1184, 1189 (La. Ct. App. 1988) (quoting *Baker v. Payne and Keller of Louisiana, Inc.*, 390 So.2d 1272 (La. 1980)).

Similarly, under the Rule 15(c)(1)(B) analysis, new claims relate back as long as they and the original claims are "united by 'a common core of operative facts.'"[113] "If a plaintiff attempts to interject entirely different conduct or different transactions or occurrences into a case, then relation back is not allowed."[114] The Fifth Circuit has emphasized that determining whether the defendant had notice of the conduct, transaction, or occurrence that forms the basis of Plaintiff's claims proves critical in ascertaining whether the allegations of an amended complaint relate back to the original complaint.[115] Courts should liberally apply Rule 15(c)'s relation back doctrine "based on the idea that a party who is notified of litigation concerning a given transaction or occurrence is entitled to no more protection from statutes of limitation than one who is informed of the precise legal description of the rights sought to be enforced."[116]

A party seeking relation back enjoys a general presumption in favor of allowing amendments to pleadings, "particularly in the absence of prejudice."[117] The Fifth Circuit has noted that, when determining whether the allegations in a *pro se* plaintiff's amended complaint relate back to the filing date of the original complaint, courts should look at what the plaintiff "attempted to set forth" in light of his "*pro se* status and the liberality accorded the pleadings of such parties."[118]

Defendants argue Plaintiff's claims in his Amended Complaint surrounding the

---

[113] *Con El., Inc. v. Burlington Ins. Co.*, No. 23-6402, 2025 WL 1917980, at *3 (E.D. La. July 11, 2025) (quoting *Mayle v. Felix*, 545 U.S. 644, 659 (2005)).

[114] *Fed. Deposit Ins. Corp. v. Conner*, 20 F.3d 1376, 1386 (5th Cir. 1994).

[115] *Flores v. Cameron Cnty., Tex.*, 92 F.3d 258, 272-73 (5th Cir. 1996)("Notice is the critical element involved in Rule 15(c) determinations."); *see also Fed. Deposit Ins. Corp. v. Conner*, 20 F.3d 1376, 1386 (5th Cir. 1994) ("Professors Wright, Miller, and Kane have explained that if the alteration of a statement of a claim contained in an amended complaint is 'so substantial that it cannot be said that the defendant was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim or defense, then the amendment will not relate back.'").

[116] *Williams v. United States*, 405 F.2d 234, 236 (5th Cir. 1968).

[117] *Gamble v. Gamble*, 54, 595, p. 10 (La. App. 2 Cir. 1/18/23), 354 So.3d 864, 868.

[118] *McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995).

5:15 a.m. and 9:52 p.m. incidents do not relate back to the Plaintiff's claims in his original complaint regarding the 5:37 a.m. incident.[119] Defendants argue that each alleged use of force involved completely different conduct and occurred at separate times of the day.[120] Defendants acknowledge that Plaintiff's Amended Complaint alleges that Defendants retaliated against Plaintiff for his verbal altercation with Charles Wallace; however, Defendants argue Plaintiff's *original* complaint did not allege any facts regarding this verbal altercation.[121] As a result, Defendants argue the allegations in Plaintiff's Amended Complaint regarding the 9:52 p.m. and 5:15 a.m. incidents do not relate back to the allegations of Plaintiff's original complaint concerning the 5:37 a.m. incident.[122]

Plaintiff argues the allegations in his Amended Complaint concerning the 5:15 a.m. and 9:52 p.m. incidents relate back to the claims in his original complaint.[123] Plaintiff argues that, in his Amended Complaint, he alleges Defendants retaliated against him for his verbal altercation with Charles Wallace.[124] Plaintiff argues the three alleged uses of excessive force all were retaliation for Plaintiff's altercation with Charles Wallace.[125] Plaintiff argues the 5:37 a.m. use of force occurred a mere twenty minutes after the 5:15 a.m. incident, and happened as a direct result of Defendants returning Plaintiff to his cell following medical treatment for injuries he sustained during the 5:15 a.m. chemical spray.[126] Plaintiff argues that the 9:52 p.m. incident involved Lance Wallace, again, using excessive force to retaliate against Plaintiff.[127] Plaintiff argues these are not isolated

---

[119] R. Doc. 130 at pp. 1-5.
[120] *Id.* at p. 2.
[121] *Id.* at p. 5.
[122] *Id.* at pp. 1-5.
[123] R. Doc. 128 at pp. 2-3.
[124]  *Id.* at p. 4.
[125] *Id.*
[126] *Id.* at p. 3.
[127] *Id.* at p. 4.

incidents, but rather a series of uses of excessive force that all arose from Plaintiff's verbal altercation with Charles Wallace two days earlier.[128]

In addition, Plaintiff argues Defendants had sufficient notice of the Plaintiff's allegations regarding the 5:15 a.m. and 9:52 p.m. incidents.[129] Plaintiff argues the Department of Corrections' Second Step response to Plaintiff's ARP regarding the 5:37 a.m. incident also addressed the 5:15 a.m. chemical-spraying incident, as well as the 9:52 p.m. incident.[130] As a result, Plaintiff argues Defendants were aware that Plaintiff had complained of multiple uses of excessive force, and were given adequate notice of the conduct that formed the basis of his Amended Complaint.[131]

The Court finds Plaintiff's claims arising out of the 5:15 a.m. and 9:52 p.m. incidents relate back to Plaintiff's claims arising out of the 5:37 a.m. incident. Courts have identified several factors in determining whether a plaintiff's allegations in his amended complaint relate back to his original complaint: whether the allegations are "united by 'a common core of operative facts;'"[132] whether the defendant had notice of the conduct, transaction, or occurrence that forms the basis of Plaintiff's claims;[133] whether allowing an amendment would prejudice the defendant(s);[134] and whether the plaintiff has appeared *pro se*.[135]

Under both Rule 15(c) and Louisiana law, the analysis for determining whether the

---

[128] *Id.*

[129] *Id.*

[130] *Id.* at p. 5.

[131] *Id.*

[132] *Con El., Inc. v. Burlington Ins. Co.*, No. 23-6402, 2025 WL 1917980, at *3 (E.D. La. July 11, 2025) (quoting *Mayle v. Felix*, 545 U.S. 644, 659 (2005)).

[133] *Flores v. Cameron Cnty., Tex.*, 92 F.3d 258, 272-73 (5th Cir. 1996)("Notice is the critical element involved in Rule 15(c) determinations."); *see also Fed. Deposit Ins. Corp. v. Conner*, 20 F.3d 1376, 1386 (5th Cir. 1994).

[134] *Gamble v. Gamble*, 54,595, p. 10 (La. App. 2 Cir. 1/18/23), 354 So.3d 864, 868.

[135] *McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995)

allegations of an amended complaint survive the statute of limitations begins with whether the new allegations arise from the same factual basis that gave rise to the allegations of the original complaint.[136] The three incidents in the Amended Complaint are alleged to be in retaliation for one common event—Plaintiff's verbal altercation with Charles Wallace. In Plaintiff's Amended Complaint, Plaintiff alleges that all three uses of force were retaliation against him for this altercation.[137] Importantly, each incident involved Charles Wallace's son, Lance Wallace.[138] Plaintiff alleges that after the three incidents, Lance Wallace said to Plaintiff, "If you dare say anything about my mom or dad again, I'm going to f*** you up."[139] The three alleged incidents all occurred on one day, and only two days after Plaintiff's verbal altercation with Charles Wallace. Plaintiff's original complaint alleged that Defendants used excessive force at 5:37 a.m. in tackling him to the ground and kneeling on him while escorting him back to his cell from the infirmary.[140] Defendants were escorting Plaintiff back from the infirmary because they had sprayed a chemical agent on Plaintiff a mere twenty minutes prior.[141] In other words, the 5:37 a.m. use of force would not have occurred had the Defendants not administered the chemical spray to Plaintiff at 5:15 a.m. In addition, the 9:52 p.m. use of force occurred not days, months, or years later, but the very same day. Plaintiff's allegations arise not from isolated uses of force. Rather, they stem from a series of uses of force, separated by hours, and all are alleged to be retaliation for Plaintiff's verbal exchange with Charles Wallace. The allegations in the Amended Complaint arise from the same factual basis that

---

[136] *Rieth v. Munguia*, 2023-0547, p. 6 (La. App. 4 Cir. 5/30/24), 391 So.3d 39, 45; *Fed. Deposit Ins. Corp. v. Conner*, 20 F.3d 1376, 1386 (5th Cir. 1994).
[137] R. Doc. 132 at ¶ 42.
[138] *Id.*
[139] *Id.* at ¶ 127.
[140] *See* R. Doc. 1.
[141] R. Doc. 128 at p. 3.

18

gave rise to the allegations of the original complaint.

In addition, whether Defendants had notice of the conduct, transaction, or occurrence that forms the basis of Plaintiff's claims is a critical factor in determining whether the allegations of Plaintiff's Amended Complaint relate back to the original complaint.[142] Defendants bear the burden of demonstrating that dismissal of Plaintiff's claims is warranted, but have failed to offer evidence showing they did not have notice of Plaintiff's multiple allegations of excessive use of force.[143] Plaintiff submitted ARPs regarding both the 5:37 a.m. incident and the 9:52 p.m. incident.[144] In response to these complaints, a prison staff member and the Department of Corrections representative reviewed documentation, including use of force reports, for all three alleged incidents.[145] Furthermore, the Second Step response to Plaintiff's ARP regarding the 5:37 a.m. incident also addressed the 5:15 a.m. and 9:52 p.m. uses of force, showing that the Department of Corrections considered the incidents related.[146] Given these facts, it is clear Defendants were aware that Plaintiff did not allege he had suffered one isolated instance of excessive force and knew, instead, that Plaintiff complained of a series of instances of targeted physical abuse. Accordingly, for purposes of this motion, the Court finds Defendants had notice of the conduct, transaction, or occurrence that forms the basis of Plaintiff's claims in his Amended Complaint.

While Defendants argue Plaintiff's original complaint failed to raise any allegations

---

[142] *Flores v. Cameron Cnty., Tex.*, 92 F.3d 258, 272-73 (5th Cir. 1996)("Notice is the critical element involved in Rule 15(c) determinations."); *see also Fed. Deposit Ins. Corp. v. Conner*, 20 F.3d 1376, 1386 (5th Cir. 1994) ("Professors Wright, Miller, and Kane have explained that if the alteration of a statement of a claim contained in an amended complaint is 'so substantial that it cannot be said that the defendant was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim or defense, then the amendment will not relate back.'").
[143] *Cantu v. Guerra*, No. SA20CV0746JKPHJB, 2021 WL 2636017, at *1 (W.D. Tex. June 25, 2021).
[144] R. Docs. 124-2 at p. 10; 128-3.
[145] R. Docs. 128-1, 128-2.
[146] R. Doc. 128-1.

of retaliation for Plaintiff's encounter with Charles Wallace, the Court does not consider such an omission dispositive. Rule 15(c) specifically allows relation back when the amendment asserts a claim that arose out of an occurrence "*attempted* to be set out" in the original pleading.[147] Furthermore, courts "rarely grant" motions to dismiss,[148] and should liberally apply the relation back doctrine, particularly when the plaintiff appears *pro se*.[149] In the present matter, Plaintiff filed his initial complaint *pro se*.[150] Although Plaintiff does not specifically allege retaliation or any facts concerning the 5:15 a.m. and 9:52 p.m. incidents in his original complaint, his other actions demonstrate that Plaintiff sought redress for all three uses of force. Plaintiff filed ARPs regarding the 5:37 a.m. and 9:52 p.m. incidents.[151] In addition, in Plaintiff's request for relief in his original complaint, Plaintiff requests that he receive "no retaliation."[152] Based on Plaintiff filing multiple ARPs regarding Defendants' September 8, 2021 conduct and the fact that he sought a prospective remedy for alleged retaliation in his original complaint, the Court finds that Plaintiff attempted to seek relief for the events of September 8 as a whole rather than one specific use of force.

"Motions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'"[153] Considering this directive, the fact that Defendants had notice of Plaintiff's allegations of multiple instances of excessive force, the fact that Plaintiff filed his original complaint *pro se*, and that each use of force occurred in close temporal proximity and allegedly stemmed from Plaintiff's verbal altercation with Charles Wallace, the Court

---

[147] Fed. R. Civ P. 15(c)(1)(b)(emphasis added).
[148] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).
[149] *McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995).
[150] R. Doc. 4.
[151] R. Docs. 124-2 at p. 10; 128-3.
[152] R. Doc. 4 at p. 7.
[153] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

finds the allegations of Plaintiff's Amended Complaint relate back to Plaintiff's original complaint.[154] As a result, Plaintiff's federal and state law claims regarding the 5:15 a.m. and 9:52 p.m. incidents are not barred by the statute of limitations and Defendants have failed to carry their burden of showing that dismissal is warranted.[155]

## CONCLUSION

**IT IS ORDERED** that Defendant's Motion to Dismiss[156] is **DENIED.**[157]

**New Orleans, Louisiana, this 23rd day of April, 2026.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[154] *See Williams v. United States*, 405 F.2d 234, 236 (5th Cir. 1968).
[155] *Cantu v. Guerra*, No. SA20CV0746JKPHJB, 2021 WL 2636017, at *1 (W.D. Tex. June 25, 2021).
[156] R. Doc. 124.
[157] Thomas Mitchell's motion to dismiss charges against him in his official capacity based on Eleventh Amendment sovereign immunity is granted without objection.

21