UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| TOMARCUS PORTER | * | | CIVIL ACTION |
| VERSUS | * | | NO. 24-504 |
| CALEB LEMIRE, ET AL. | * | | SECTION "E" (2) |

**ORDER AND REASONS**

Pending before me is Plaintiff Tomarcus Porter's Motion to Compel Discovery Responses. ECF No. 139. Defendants Gavin "Caleb" LeMaire, Dustin Luper, Thomas Mitchell and Lance Wallace timely filed an Opposition Memorandum, and Plaintiff filed a Reply Memorandum. ECF Nos. 140, 141. No party requested oral argument in accordance with Local Rule 78.1, and the Court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Plaintiff's Motion to Compel is GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

I.    **BACKGROUND**

At the relevant time, Plaintiff was an inmate at Rayburn Correctional Facility in Angie, Louisiana. ECF No. 132 ¶ 3. Plaintiff alleges that correctional facility officers subjected him to a pattern of abuse, harassment and brutalization after his arrival in January 2021 and through the incidents at issue in this case. Specifically, Plaintiff has sued four correctional officers alleging that they used excessive force against him in three incidents (5:15 a.m., 5:37 a.m., and 9:50 p.m.) on September 8, 2021, which he alleges were in retaliation for a verbal altercation he had with another officer on September 6, 2021. *Id.* ¶¶ 4-7, 9, 27, 42-43, 68, 95. Plaintiff brings, among

1

others, claims under 42 U.S.C. § 1983 (excessive force and failure to train and supervise) and state

law assault and battery. *Id.* ¶¶ 164-185.

Plaintiff issued a First Set of Requests for Production on February 10, 2026, and

Defendants responded on March 20, 2026. ECF Nos. 139-6, 139-7. Plaintiff now seeks an order

compelling Defendants to produce documents in response to RFP Nos. 1, 2, 8 and 13. ECF No.

139. Plaintiff asserts that, as narrowed,[1] RFP 1 seeks all incidents of use of force against him, but

---

[1] ECF No. 139-1 at 5 (describing how the requests were narrowed). The full requests (ECF No. 139-6) and responses (ECF No. 139-7) read:

REQUEST FOR PRODUCTION NO. 1:

    All documentation concerning uses of force at Rayburn involving Mr. Porter in the three years prior and in all years after the September 8, 2021, Incidents. This requested production is proportional to the needs of the case because the information sought will show, inter alia, the history of interactions between Mr. Porter and officers at Rayburn and thus contextualize the parties' subjective knowledge and make plain the reasonableness of inferences from evidence related to the September 8, 2021, Incidents.

RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

    Respondent objects to the extent that this Request is overbroad, not reasonably calculated to lead to the discovery of admissible evidence based on the allegations and is not proportional to the needs of the case. First, Plaintiff was not housed at Rayburn for the three years preceding the incident. As alleged in the Complaint, he was transported to Rayburn as of January 19, 2021 (less than nine months prior to the alleged incidents). Second, the Request is not limited to incidents involving the Defendants herein, but any "officer" at Rayburn, which is overbroad and is not proportional to the needs of the case for plaintiff's allegations against these defendants on a single day. Additionally, Plaintiff's allegations claim that the uses of force stemmed from an incident with Charles Wallace, a non-defendant, stating "Watch my smoke" on September 7, 2021, one day before the incidents, which was characterized as a "personal vendetta" sparked based on the events of September 7, 2021. Given the allegations in the Complaint, any uses of force prior to the "exchange of words" on September 7, 2021, which allegedly sparked a "personal vendetta", are not relevant to these claims and not proportional to the needs of the case as alleged.

    Additionally, none of the subsequent uses of force involving Plaintiff, occurring after these incidents are relevant to the incidents on September 8, 2021, or reasonably calculated to lead to the discovery of admissible evidence as such has no bearing on the allegations and are also not proportional to the needs of the case to prove the knowledge of the parties and their actions on September 8, 2021. Nothing subsequently occurring could show the "history of interactions" or contextualize the subjective knowledge of the parties on that date.

REQUEST FOR PRODUCTION NO. 2:

    All documentation related to uses of force at Rayburn involving Defendants in the five years prior to the September 8, 2021, Incidents. This requested production is proportional to the needs of the case because the information sought is likely to show, *inter alia*: how Defendants deployed force against persons incarcerated at Rayburn; the administration and effectivization of Rayburn's policies governing uses of force and reviews thereof; and the Defendants' subjective knowledge of those policies.

RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

    Respondents object to the extent that this Request is wholly overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence based on the allegations and is not proportional to the needs of the case. Plaintiff's allegations claim that the uses of force stemmed from an incident with Charles Wallace, a non-defendant, stating "Watch my smoke" on September 7, 2021, one day before the incidents, which was characterized as a "personal vendetta" sparked based on the events of September 7, 2021. Yet, Plaintiff seeks a five-year history from each defendant, which is not warranted based on the

2

allegations. Given the allegations in the Complaint, any uses of force prior to the "exchange of words" on September 7, 2021, which allegedly sparked a "personal vendetta", are not relevant to these claims from Mr. Porter, especially uses of force against other individuals in obviously separate circumstances. Such a request is not proportional to the needs of the case as alleged and creates a significant burden not only on the defendants to retrieve and produce such documents but also on the litigation in having to litigate each use of force that may be questioned. The Request is further overbroad in that it does not seek complaints but every single use of force in five years from every defendant, which is overly broad as it can range from mere physical restraint to the use of chemical agents to physical altercations. Further, uses of force against other individuals, in completely different circumstances, are completely irrelevant and not proportional to the needs of the case regarding the claims of Mr. Porter. Additionally, Plaintiff has not brought any *Monell* claim and is not entitled to use such reports to show customs, practices, prior incidents, prior acts, or propensity towards violations and excessive force as proof of a violation against these individual defendants.

REQUEST FOR PRODUCTION NO. 8:

All documents concerning the disciplinary histories of Defendants Luper, LeMaire, and Wallace at Rayburn in the five years prior to and the two years following September 8, 2021, Incidents, including but not limited to: (a) formal write-ups; (b) counseling memoranda; and (c) any other correspondence concerning the possibility of discipline of Defendants Luper, LeMaire, and Wallace. This requested production is proportional to the needs of the case because the information sought is likely to show the Defendants' lived experiences of the accountability systems governing their employment at Rayburn.

RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

Respondents object to the extent that this Request is wholly overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence based on the allegations and is not proportional to the needs of the case. Plaintiff's allegations claim that the uses of force stemmed from an incident with Charles Wallace, a non-defendant, stating "Watch my smoke" on September 7, 2021, one day before the incidents, which was characterized as a "personal vendetta" sparked based on the events of September 7, 2021. Yet, Plaintiff seeks a five-year history from each defendant, which is not warranted based on the allegations. Given the allegations in the Complaint, any discipline prior to the "exchange of words" on September 7, 2021, which allegedly sparked a "personal vendetta", are not relevant to these claims from Mr. Porter, especially to the extent they involve other individuals in obviously separate circumstances. Such a request is not proportional to the needs of the case as alleged. Further, discipline of the Respondents in completely different circumstances are completely irrelevant and not proportional to the needs of the case regarding the claims of Mr. Porter. Additionally, Plaintiff has not brought any *Monell* claim and is not entitled to use such reports to show customs, practices, prior incidents, prior acts, or propensity towards violations and excessive force as proof of a violation against these individual defendants.

REQUEST FOR PRODUCTION NO. 13:

All documentation that reflects, describes, or refers to instances in which Defendant Mitchell has initiated, conducted, or otherwise participated in disciplinary actions or investigations involving employees at Rayburn in the five years prior to and two years following the September 8, 2021, Incidents. This requested production is proportional to the needs of the case because the information sought is likely to show the extent of Defendant Mitchell's experience with the application of Rayburn's disciplinary policies and the operative accountability processes experienced by Defendants and other Rayburn employees during the relevant period.

RESPONSE TO REQUEST FOR PRODUCTION NO. 13:

Respondents object to the extent that this Request is wholly overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence based on the allegations and is not proportional to the needs of the case. Plaintiff's allegations claim that the uses of force stemmed from an incident with Charles Wallace, a non-defendant, stating "Watch my smoke" on September 7, 2021, one day before the incidents, which was characterized as a "personal vendetta" sparked based on the events of September 7, 2021. Yet, Plaintiff seeks a five-year history from Mitchell regarding his participation in disciplinary actions or investigations of other employees at Rayburn, which is not warranted based on the allegations. Such a request is not proportional to the needs of the case as alleged and creates a significant burden not only on the defendant to retrieve and produce such documents but also on the litigation in having to litigate each disciplinary action that Mitchell may have been involved in. The Request is further overbroad in that it does not seek such actions with respect to these defendants, but all employees of Rayburn, which is overbroad and not proportional to the needs of the case based on the allegations. Further, discipline and investigations into

3

Defendants have produced only those leading up to the September 8, 2021, incident; RFP 2 seeks documented use of force by Defendants for 5 years before and 2 years after the September 8, 2021, incident, but Defendants have objected to producing any responsive documents; RFP 8 seeks Defendants' disciplinary histories related to use of force for 5 years before and 2 years after date the September 8, 2021, but Defendants have produced only sustained complaints prior to the incident; and RFP 13 seeks documentation of Mitchell's investigations into the officer use of force incidents from 2016 to date, but Defendants have produced only documents relating to the investigation of the September 8, 2021 incident at issue. ECF No. 139 at 1-2.

Plaintiff acknowledges the absence of a *Monell* claim but argues the requested information is relevant to the supervisory claims, which requires a pattern of similar violations, and scienter required for excessive force. ECF No. 139-1 at 2, 7-9. Plaintiff argues that other use-of-force incidents are relevant to show a pattern of unchecked behavior by the officers or efforts to punish other prisoners, post-incident events are relevant when the claim turns on state of mind or supervisory notice, and unsustained allegations of excessive force are relevant to show pattern. *Id.* at 8-12, 13-14. Plaintiff also argues that Defendants' boilerplate proportionality objection must be overruled. *Id.* at 12-13.

In Opposition, Defendants argue they produced all unusual activity reports regarding Plaintiff (documents regarding use-of-force or other situations), all disciplinary write-ups through September 8, 2021, all supervisory reviews conducted by Mitchell on all uses of force (including Defendants and against Plaintiff or any other inmate) through September 8, 2021, but they object to 7 years' of data of use-of-force documents for all prisoners regardless of circumstances and

---

other employees in completely different circumstances are completely irrelevant and not proportional to the needs of the case regarding the claims of Mr. Porter. Additionally, Plaintiff has not brought any *Monell* claim and is not entitled to use such reports to show customs, practices, prior incidents, prior acts, or propensity towards certain conduct as proof of a violation against this defendant.

anything after September 8, 2021.  ECF No. 140 at 3-4.  Defendants also assert that they have produced all disciplinary records in Defendants' files but object to producing routine use-of-force reviews, regardless of inmate at any time.  *Id.* at 4.  Citing the elements for an excessive force claim and failure to supervise or train claims, Defendants argue that post-incident reports and training have no relevance to the earlier September 8, 2021, incidents, and Plaintiff's reliance on broader discovery allowed for a *Monell* claim is misplaced.  *Id.* at 5-8.

In Reply, Plaintiff asserts that post-incident events are relevant to Defendants' state of mind because subjective motivations are relevant to the "malicious and sadistic" factor as well as the supervisory liability for failure to train.  ECF No. 141 at 1-4.  Plaintiff also argues that, because a supervisor liability claim mirrors a *Monell* claim, broader discovery is proper.  *Id.* at 4-5.  Plaintiff concludes by arguing that Defendants have not established burden, and any privacy interests may be addressed through a protective order.  *Id.* at 5-7.

## II.    APPLICABLE LAW

### A.  Standard For Discovery

Courts have broad discretion in discovery matters.[2]  Rule 26(b)(1) of the Federal Rules of Civil Procedure permits parties to obtain in discovery "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  In assessing proportionality, the court should consider the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  FED. R. CIV. P. 26(b)(1).

Rule 26(b) is not, however, "a license to engage in an unwieldy, burdensome, and

---

[2] *Crosswhite v. Lexington Ins. Co.*, 321 F. App'x 365, 367 (5th Cir. 2009) (quoting *Scott v. Monsanto, Co.*, 868 F.2d 786, 793 (5th Cir. 1989)).

speculative fishing expedition."[3]  While relevancy in the discovery context is broader than in the

trial context, that legal tenet should not be misapplied to allow fishing expeditions in discovery.[4]

Thus, while the discovery rules are accorded broad and liberal treatment to achieve their purpose

of adequately informing litigants in civil trials,[5] discovery does have "ultimate and necessary

boundaries."[6]  Rule 26 instructs the court to limit the extent of discovery if the proposed discovery

is outside the scope allowed under Rule 26(b)(1).  FED. R. CIV. P. 26(b)(2)(C)(iii).

### B. Elements of Plaintiff's Claims

#### 1. Excessive Force

Generally, an excessive force claim requires (1) an injury (2) that resulted directly and only

from a use of force that was clearly excessive to the need, and (3) the excessiveness of which was

objectively unreasonable.[7]  Because prison officials have the difficult job of balancing the need to

maintain and restore discipline, the core question when an official is accused of using excessive

force in violation of the Eighth Amendment is "whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm."[8]  This standard thus

has both subjective and objective components.[9]

Although one focus of the standard is the official's subjective intent to punish, that intent

is determined by reference to the non-exclusive *Hudson* factors used to assess whether unnecessary

---

[3] *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (citation omitted).

[4] *Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, No. 16-17277, 2017 WL 3011144, at *4 (E.D. La. July 14, 2017) (citations omitted); *Ganpat v. E. Pac. Shipping, PTE, Ltd.*, 611 F. Supp. 3d 305, 311 (E.D. La. 2020) (quoting *Crosby*, 647 F.3d at 264).

[5] *Herbert v. Lando*, 441 U.S. 153, 176 (1979) (citations omitted).

[6] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

[7] *Bangmon v. Alexander*, No. 18-41043, 2021 WL 3477490, at *2 (5th Cir. Aug. 6, 2021) (per curiam) (citation omitted); *Narro v. Edwards*, 829 F. App'x 7, 11 (5th Cir. 2020).

[8] *Baldwin v. Stalder*,137 F.3d 836, 838-39 (5th Cir. 1998) (citation modified) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

[9] *Mosley v. White*, 464 F. App'x 206, 211 (5th Cir. 2010) (per curiam).

and wanton infliction of pain was used in violation of a prisoner's Eighth Amendment right to be

free from cruel and unusual punishment.[10]  The factors are:

        (1) the extent of the injury suffered;
        (2) the need for the application of force;
        (3) the relationship between the need and the amount of force used;
        (4) the threat reasonably perceived by the responsible officials; and
        (5) any efforts made to temper the severity of a forceful response.[11]

"The Eighth Amendment's prohibition of cruel and unusual punishments necessarily

excludes from constitutional recognition *de minimis* uses of physical force, provided that the use

of force is not of a sort repugnant to the conscience of mankind."[12]  Thus, the court looks to the

"nature of the force"—specifically, whether it was nontrivial and applied maliciously and

sadistically to cause harm.[13]  In other words, did the officer subjectively perceive a reasonable

threat when he acted or instead acted maliciously to cause harm.[14]  Of course, not "every

malevolent touch by a prison guard gives rise to a federal cause of action."[15]

While the use of excessive physical force against a prisoner may constitute cruel and

unusual punishment even absent serious injury,[16] an inmate must allege more than a *de minimis*

injury from the altercation or excessive force to state an Eighth Amendment claim, unless the use

---

[10] *Byrd v. Harrell*, 48 F.4th 343, 347 (5th Cir. 2022); *Cowart v. Erwin*, 837 F.3d 444, 452-53 (5th Cir. 2016); *Skinner v. Gautreaux*, 593 F. Supp. 3d 383, 392-93, 395 (M.D. La. 2022).

[11] *Baldwin*, 137 F.3d at 839 (citations omitted).  A Fourteenth Amendment excessive force claim asserted by a pretrial detainee, in contrast, does not look to the defendant's state of mind or subjective intent.  The only issue in that case is whether the officer's use of force was objectively reasonable under the Fourteenth Amendment.  *Kingsley v. Hendrickson*, 576 U.S. 389, 391-92 (2015); *see also Luke v. Neal/Richard*, No. 19-14605, 2021 WL 2635453, at *4 n.16 (E.D. La. June 25, 2021) (Douglas, M.J.).

[12] *Hudson*, 503 U.S. at 9-10 (citation modified) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)); *accord. Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005).

[13] *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (per curiam).

[14] *Byrd*, 48 F.4th at 348 (citing *Bourne v. Gunnels*, 921 F.3d 484, 491 (5th Cir. 2019)).

[15] *Hudson*, 503 U.S. at 9 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

[16] *Wilkins*, 559 U.S. at 34 (quoting *Hudson*, 503 U.S. at 4).  In *Wilkins*, the Supreme Court confirmed that the standards established in *Hudson* remain the law.  *Id.*

of force is "repugnant to the conscience of mankind."[17] The Fifth Circuit has characterized the injury requirement as "a sliding scale, not a hard cutoff."[18] This approach treats the degree of injury—even if minor—as interrelated to the reasonableness and excessiveness of the officer's force. "Any force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only."[19] Therefore, to determine whether injury caused by excessive force is more than *de minimis*, the court must consider the context in which the force was used and all surrounding circumstances.[20]

### 2. Failure to Train/Supervisor Liability

A supervisory official cannot be held individually liable under § 1983 for the actions of subordinates on a theory of vicarious liability; only the official's direct acts or omissions will give rise to individual liability.[21] A supervisory official may be held liable for the wrongful acts of a subordinate when the supervisor himself breached a duty imposed by state or local law and that breach caused plaintiff's constitutional injury.[22] Supervisor liability thus results from a § 1983 failure-to-train claim.

To establish a failure to train, a plaintiff must show (1) that the supervisor failed to train or supervise the officers involved; (2) a causal connection between the alleged failure to supervise or train and the claimed violation of plaintiff's rights; and (3) the failure to train or supervise

---

[17] *Hudson*, 503 U.S. at 9-10; *see Wilkins*, 559 U.S. at 34 (overturning lower court decision and finding injuries from officer's beating inmate consisting of bruised heel, lower back pain, increased blood pressure, migraine headaches, dizziness, psychological trauma, and mental anguish to be more than *de minimis*).

[18] *Buehler v. Dear*, 27 F.4th 969, 982 (5th Cir. 2022); *see also Wilkins*, 559 U.S. at 37 (explaining the extent of the injury is relevant to the Eighth Amendment inquiry because it "may . . . provide some indication as to the amount of force applied").

[19] *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (quoting *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013)).

[20] *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

[21] *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999).

[22] *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998).

constituted deliberate indifference to plaintiff's constitutional rights.[23]  Thus, the supervisor must have acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates.[24]  For deliberate indifference, "there must be 'actual or constructive notice' 'that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights' and the actor nevertheless 'choose[s] to retain that program.'"[25]  Thus, plaintiff must establish that the supervisor was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed.[26]

## III.    ANALYSIS

Neither party disputes that Defendants have produced records reflecting all uses of force involving Porter and Defendants, up to the September 8, 2021 incident.  ECF No. 139-1 at 1; No. 140 at 3-4.

Defendants' objection to producing post-September 8, 2021, information is sustained. Although Plaintiff asserts that the information is relevant to subjective intent (ECF No. 139-1 at 6-9; No. 141 at 1-3), he fails to recognize that an official's subjective intent is determined through assessment of the *Hudson* factors.  Nor does Plaintiff articulate how post-September 8, 2021, events have any possible relevance to the *Hudson* factors in relation to the **September 8, 2021**, incident.  Rather, the request for post-September 8, 2021, information appears to be more of a fishing expedition rather than an effort to obtain evidence relevant to any pending claim or defense asserted in this matter.  Post-incident events or knowledge simply have no relevance to the extent of injury suffered, the need for the application of force, the relationship between the need and the

---

[23] *Pena*, 879 F.3d at 623; *Smith*, 158 F.3d at 911-12.

[24] *Johnson v. Harris County*, 83 F.4th 941, 946 (5th Cir. 2023) (quoting *Pena*, 879 F.3d at 620 (quoting *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011))).

[25] *Zadeh v. Robinson*, 928 F.3d 457, 473 (5th Cir. 2019) (quoting *Porter*, 659 F.3d at 447).

[26] *Hassan v. Shaw*, 761 F. App'x 429, 433 (5th Cir. 2019) (citing *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)).

amount of force used, the threat reasonably perceived by the responsible officials, and any efforts to temper the severity of a forceful response.  Thus, post-incident events are not relevant to the subjective intent inquiry under the Eighth Amendment.

Further, contrary to Plaintiff's assertion, courts regularly recognize that broader discovery is allowed on *Monell* claims than against a defendant in his individual capacity.  As then-Magistrate, now Circuit, Judge Dana Douglas recognized, courts addressing discovery-related disputes in § 1983 cases involving *Monell* claims have routinely recognized that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff sued only the individuals directly involved in the deprivation of her rights.[27]  Even when prior incidents are sought for a *Monell* claim, the Fifth Circuit instructs that the incidents require "similarity and specificity; prior indications cannot be for any and all bad or unwise acts, but rather must point to the specific violation in question."[28]  Here, Plaintiff seeks production of every use of force by Defendants against any other inmate, regardless of circumstances.  But even in a *Monell* situation where discovery is broader, a plaintiff is limited to discovery of other substantially similar use-of-force complaints.

Further, Defendants assert that they have produced all use-of-force documents **relating to these Defendants**.  To the extent Defendants have not produced all use-of-force documents involving the named Defendants, Defendants must produce use-of-force documents involving the named Defendants where the named Defendant is alleged to have used excessive force

---

[27] *Maurer v. St. Tammany Par. Sch. Bd.*, No. 19-13479, 2020 WL 12801030, at *2 (E.D. La. June 26, 2020) (citations omitted); *see also Lou v. Lopinto*, No. 21-80, 2022 WL 1447554, at *9 (E.D. La. Mar. 24, 2022).

[28] *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (citation modified) (quoting *Est. of Davis*, 406 F.3d at 383).  Establishing a pattern "requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)); *see Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002) (holding that 11 incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry); *see also Peterson*, 588 F.3d at 850 (affirming the district court's ruling that 27 complaints of excessive force filed over a period of four years were insufficient to establish a pattern of excessive force).

(1) involving the improper use of chemical spray, (2) pushing and pulling an inmate while shouting to stop resisting or slamming an inmate to the ground; and (3) tackling an inmate to the ground and punching him.  These are the events at issue and thus the only relevant "pattern" documents. Documents reflecting other types of use-of-force allegations or allegations involving other officers and other inmates with no relation to the named Defendants simply have no relevance to any claim or defense in this matter.

Finally, the parties dispute the appropriate look-back period for production of Defendants' disciplinary records, with Plaintiff requesting five years and Defendants providing three years' worth of information in reliance on the undersigned's time limitation in a difference prisoner excessive force case.[29]  Decisions vary the relevant temporal scope depending on the particular cases, with decisions ranging from two to ten years.  Indeed, contrary to Plaintiff's assertion, Judge Roby did not authorize discovery with no temporal limitation in *Ladesma v. Walmart, Inc.*, No. 18-12143, 2020 WL 5311369 (E.D. La. Sept. 4, 2020).  Judge Roby limited Interrogatory No. 12 to use of force complaints against the deputy for the 2-year period of 2016-18.[30]

Neither party identifies how long either of the Defendants has been employed at the facility, and the parties dispute whether a five-year or three-year period is proper.  This Court has previously found that a three-year review of relevant disciplinary matters is proportional to the needs of the case in a similar excessive force matter.  Accordingly, the Court will again adopt this three-year time period, thus authorizing discovery from September 1, 2018 through September 30, 2021.  This three-year restriction is further supported by the fact that Plaintiff did not arrive at the facility until January 2021, and thus, the historical information already extends two years before Plaintiff's arrival.

---

[29] *See Disedare v. Brumfield*, No. 22-2680, 2023 WL 3496395, at *11 (E.D. La. May 17, 2023).
[30] *Ladesma*, 2020 WL 5311369, at *5.

11

## IV.    <u>CONCLUSION</u>

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiff's Motion to Compel (ECF No. 139) is GRANTED IN PART AND DENIED IN PART as stated herein.  Defendants must provide any supplemental production within 30 days.

New Orleans, Louisiana, this ____7th____ day of July, 2026.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

12